Judge Marshall
delivered the Opinion of the Court.
This Court is not disposed to scrutinize very strictly, the grounds on which a new trial has been granted, when it appears that, in consequence of a technical and unexpected objection to the authentication of an important title paper, the merits were not decided by the first *342 verdict. In such a case, the negligence of the party whose title paper has been rejected, must be gross, and the error of the Court in granting a new trial on the ground of surprise flagrant, before this Court will set aside a verdict rendered upon a full hearing of the evidence, uninfluenced by any improper opinion of the Judge, in order to let in a verdict and judgment founded on a partial exhibition of the rights of the parties. Indeed, we are inclined to the opinion that, in such a case, a second verdict never should be set aside, when it is apparent that it is conformable to the justice of the case. In the present instance, the affidavits on which the new trial was granted, leave no doubt that the plaintiff and his counsel were in fact surprised by the rejection of his patent. And, although, if the utmost degree of vigilance had been used the defects in its authentication might have been detected and cured before the first trial, yet they are not of so palpable a character as to evince such an inexcusable neglect in failing to perceive and remedy them, as ought to deprive the party, on that ground merely, of the advantage of a verdict rendered in his favor upon a full and fair trial.
It is not essential to the validity of the copy of a patent, that it should show the seal.
A deed certified as having been duly proved and recorded in the office of the Gen. Court of Va. before the separation, is valid for any purpose.
A deed acknowledged before the Mayor of London, and by him certified with his seal of office annexed, recorded in the county where the land lies, is sufficiently authenticated to he read as evidence, &, under the act of 1785, to pass the title.
*342 We proceed, therefore, to consider the objections to the judgment, growing out of opinions of the Court in the progress of the last trial, when the jury found a verdict for the plaintiff.
First. It is assigned for error that the Court refused to exclude from the jury the title papers offered by the plaintiff in the action, now the appellee. But the objection to the patent, because the copy produced was without a seal, was properly overruled, as decided at the present term, in the case of Sneed vs. Ward &c. [Ante, 188.] The deed from Joshua Fry, heir at law of the patentee, John Fry, to Charles Vancouver, having been duly proved and admitted to record in the office of the General Court of Virginia, according to the laws then in force, before Kentucky became a separate Commonwealth, and these facts being properly certified, it is not only sufficiently authenticated to authorize its admission as evidence, but is as valid to all purposes, as if it were recorded in the county of this State in which the land is *343 situated. The deed from Vancouver to Fiott and the two Vaughans, having been acknowledged before the Mayor of London, and certified by him, with his seal of office annexed, and having been, in due time, recorded in the clerk’s office of the county in which the land was situated, was also, sufficiently authenticated to be used as evidence, and, under the act of 1785, to pass the title effectually, so far as authentication can give it effect. And whatever may have been its operation as to Fiott, it vested the legal title as to two undivided third parts of the land in the two Vaughans, as was decided upon the same deed, in the case of Fry, Vaughan &c. vs. Smith &c. 2 Dana, 38. The demise in which Fiott was named as a lessor having been, in effect, withdrawn, by discontinuing the action as to that, and the jury having found the defendants guilty as to two thirds only of the land, it is unnecessary to say any thing as to his interest.
A notice to take depositions may he served by q. private persons and his oath in court, or his affidavit sworn to before a J. P. is sufficient proof of the service.
Leaving a notice at a party’s residence, with his wife, is a good service on him— especially, when ample time was allowed for him to get the notice in season. The same, where he is no party to the suit, but designated, by agreement, to receive notices.
Second. The appellants moved to exclude two depositions from the jury, on the ground that there was no other evidence of the service of the notices for taking them, than by the affidavit of a private individual made before and certified by a justice of the peace; and that, as to one of them, the affidavit shows no personal service on the party to be notified, but that the notice was left at his residence with his wife, he being from home. Both of these objections are untenable. The act of 14th of February, 1820, 1 Stat. Law, 900, makes such affidavit as effectual as if made in Court; and it never has been doubted, that a private individual might, by his oath in Court, prove the service of notice. And we think there can be as little doubt that leaving the notice at the residence, and with the wife, of the party, in his absence, should be deemed sufficient; and especially when, as in the present case,,an ample interval is allowed between the date of the service and the time of taking the deposition, within which the party may be presumed to have received information of the fact. 2 Stat. Law, 1229; Printed Decisions, 141, Pope &c. vs. Commonwealth. Nor is it material that, in this case, the party at whose residence the notice was left, was not a party to the suit, but was an individual to whonn, by agreement of the *344 parties, notice might be given, with the same effect as if given to the defendants themselves. We are also, of opinion, that the age and condition of the deponents was such as to authorize the reading of their depositions, though taken de bene esse. And, further, that as to Fowler’s deposition, with regard to which alone there could be any question on this point, 'its exclusion would not have varied the case upon the evidence; as the material fact proved by him (viz: the handwriting of Vancouver to the deed from him to Fiott &c.) was sufficiently proved by the certificate of the Mayor of London; and the other facts were proved by the defendants’ own witnesses.
The Register’s deed, for land sold for taxes, as the property of one who had conveyed it away, before the taxes were assesed upon it, passes no title.
Where people settle on land, without claiming any right to it— mere squatters-in judgment of law, they hold under the legal title, and their possession inures to its benefit: so, where a possession of that sort must be included to make out the bar, there was no error in refusing instructions as to the limitation.
Third. The Register’s deed purporting to convey the land in question to Achilles Sneed, in consequence of a sale of the same land for taxes charged thereon, from 1792 to 1799, was ineffectual to pass the title under Fry’s patent, because the land was sold and conveyed as the land of Joshua Fry, and for taxes charged to him, when he had conveyed it to Vancouver, by deed regularly executed, acknowledged and recorded, in the year 1790—two years before any portion of the taxes for which it was sold, was charged or became payable, and it does not appear but that the taxes for the same year were paid by the real owner of the land. The Court, therefore, did not err in refusing to instruct the jury peremptorily, that this deed barred the plaintiff’s action.
Fourth. Nor did the Court err in refusing to instruct the jury, that if the defendants, and those from whom they derived the possession, had had the continued adverse possession of the land for twenty years before the commencement of the action, they should find for the defendants, as to so much land as was thus possessed. Such an instruction, without qualification, could scarcely have failed to mislead the jury. For although there was evidence conducing to prove that certain individuals had settled on the land about twenty years before the commencement of the suit, and that their possession was transmitted down to the defendants, the evidence did not conduce to prove that this possession, for the first fifteen or sixteen years, was adverse to the plaintiffs. *345 On the contrary, the persons who first settled, as above stated, are proved to have been mere squatters, who went upon the land claiming no interest in it, and not professing to enter under any particular claim, and there being no proof whatever that they claimed adversely to the legal title, until the year 1814 or 1815, their possession until that time, was, in judgment of law, under the legal title, and inured to its benefit.
One who, having purchased the land at a tax sale, recovered the possession from the squatters, holds adversely; but the nature of their previous possession, is not thereby changed; he cannot avail himself of it, against the holders of the legal title.
It is true that, in 1814 and 1815, Sneed recovered and obtained possession of different portions of the land by virtue of his deed from the Register, and there is no doubt that his possession, and that of the defendants who came in under him, was adverse to the lessors of the plaintiff. Rut his eviction of the previous tenants did not change the character of their previous possession, so as to avail him, or those claiming under him, as an adverse possession against the real holder of the legal title. The recovery by Sneed, was only five or six years before the commencement of the suit, and as there was no proof of any act or claim on the part of the previous possessors, evincing hostility to the actual holder of the title, the Court properly told the jury that, although twenty years continued adverse possession was a bar, it did not apply in this case.
Wherefore, the judgment is affirmed.