JOHN HORTON *vs.* ELIJAH GREEN.

1. In action for deceit and false warranty, after evidence by plaintiff that he discovered the alleged unsoundness (glanders) early next morning after the sale, it is competent, by way of impeaching such testimony, for the defendant to prove by a witness that he and plaintiff lived in a very small village (Boone) and within fifty yards of each other and that he (witness) did not hear of the alleged unsoundness until some *two weeks* after the sale.

2. Per BOYDEN, J., *arguendo:* Glanders among stock is quite as alarming to the owner as small pox among men.

3. Evidence, by way of dialogue, *in haec verba:*—
   Plaintiff:—"What will you take for your mule?"
   Defendant:—"One hundred and twenty-five dollars."
   Plaintiff:—"I can't give $125, but if it is all sound and right I will give you $100.
   Defendant:—"It is all sound and right, and I will take $100 if you will pay the money down."
   Plaintiff:—"I cannot pay the money all down, but will pay $25 down and give my note and security for the balance."
   Defendant:—I agree; here's your mule."
   —Does not *per se* constitute a warranty, but is only evidence for the jury, to be weighed by them in connection with the surrounding circumstances of the transaction.

4. Among these circumstances may be considered the tone, looks, gestures and the whole manner of the transaction.

5. The doctrine upon special contracts of personalty and the point whether the question of warranty is to be decided by the Court or left to the jury with the proper instructions, has been too long and too thoroughly settled in this State, to be now overturned by decisions in other Courts and this Court is satisfied with the reasoning and adheres to the former decisions.

The cases of *Baum* v. *Stevens*, 2 Ired., 411; *Erwin* v. *Maxwell*, 3 Mur., 241, and *Ayers* v. *Parks*, 3 Hawks, 59, cited and approved.

Civil action tried before Mitchell, J., at the last Fall Term of Caldwell Superior Court.

John Horton *v.* Elijah Green.

It is considered that the *syllabus* and opinion convey a sufficiently correct idea of the questions raised and points decided without an attempt to condense the voluminous statement contained in the transcript. Suffice it to state that the second point was made by way of requests for instructions to the jury, embracing substantially the language contained in the dialogue in the third *syllabus.*\*

There was a verdict and judgment for the defendant and the plaintiff appealed.

*Folk* and *Batchelor* for the appellant.

It is often said in the books that "whether a verbal warranty as to the quality of a personal chattel exists or not is a question of intention, to be inferred by a jury from the nature of the sale and the circumstances of the particular case."

If this means that the rules for interpreting verbal warranties differ from those applied to other contracts—the position is not sustained by legal analogy and authority. It is true that the existence of a warranty, like that of every other contract, depends upon the intention of the parties, but it does not follow that such intention is, in every case, matter of fact to be ascertained by a jury. If the warranty depends upon words and circumstances which are disputed, the jury in determining the dispute, necessarily determines the question of warranty, but if the words and the circumstances under which they were used, are ascertained, the existence of the warranty is matter of law for the Court.

The learned counsel then proceeded to make many distinctions, presented numerous analogies, collated and reviewed

---

\*The Attorney General would respectfully suggest to the Profession that reporting would be greatly expedited, where the statement of the case is voluminous, if counsel engaged would file a brief of "the points" intended to be raised on the record, and he knows none to whom this analytical process would be less irksome than the learned counsel who appeared in this cause.

JOHN HORTON *v.* ELIJAH GREEN.

the cases on the subject from earliest period. The great "length" of his "brief" forbids its insertion.

*Battle & Sons* for the appellee :

I. The evidence of the witness to prove that he lived within fifty yards of plaintiff, and how long after the sale before he heard of the disease, was competent,

(1.) To show that the mule was sound

PAGE 498.
  LAMBETH *v.* N. C. R. R.Co—For the words "there was a verdict for the plaintiff, &c.," read "there was a verdict for the defendant, and from the judgment rendered thereon, the plaintiff appealed.

........., ...., *Ingo* v. *Bond.* 5
Hks., 101, *Baum* v. *Stevens*, 2 Ired. 411, *Foggart* v. *Blackweller*, 4 Ired., 238. *Starnes* v. *Erwin*, 10 Ired., 226.

*Armfield* on the same side :

Where the words used are merely words of commendation used as expressing only an opinion, no action of warranty lies. Selwyn's N. P., 683. *Erwin* v. *Maxwell*, 3 Mur., 241, *Foggart* v. *Blackweller*, 4 Ired., 237.

BOYDEN, J. In this case the plaintiff offered evidence to show that the next morning after the trade, between day-light and sun-up plaintiff's son discovered that the mule was diseased, and running copiously at the nose, his legs and throat swollen, and his head drooping. The defendant called on Thomas J. Coppy as witness, who stated that he, at the time of the trade and after, lived in the same town with the plaintiff, (which is quite a small village) and within fifty yards of the plaintiff. This witness was then asked, "How long after the sale by Green to Horton of this mule, did you first hear that it was was diseased. This question was objected to by the plaintiff,

but the Court admitted it, and he answered about two weeks.

This we think was some evidence at least, tending to con-tradict the plaintiff, whose statement went to show that the mule the morning after the purchase, was pretty far gone with the glanders, of which disease the mule and five others of his stock died; a disease among stock quite as alarming to the owners as small-pox among men. The case of *Newby* v. *Jack-son*, 7 *Jones*, 351, is a full authority for the admission of this evidence. The only other question made in this Court was, that the language used by the parties, if believed, constituted a warranty in law; that His Honor ought so to have instruct-ed the jury. The evidence which plaintiff insisted on amount-ed to a warranty in law, was as follows:

Horton said, "what will you take for your mule?" Green said, "one hundred and twenty-five dollars." Horton said, "I can't give one hundred and twenty-five dollars; but if it is all sound and all right, I'll give one hundred dollars." Green re-plied, "it is all sound, and all right; and I will take one hun-dred dollars, if you will pay the money down." Horton re-plied, "that he could not pay the money all down, but offered to pay twenty-five dollars down and to give his note with se-curity for the balance, to which Green assented."

It was this language which passed between the plaintiff and defendant which the plaintiff's counsel contended constituted a warranty in law, and that His Honor should so instruct the jury.

His Honor declined so to instruct the jury, but said to the jury, "it is for you to say what the meaning and intent was between Horton and Green, from the testimony of Horton and Brown and the other testimony in the cause, and to determine from the language used, the spirit in which the parties met, and all the other circumstances, whether it was Green's inten-tion to indemnify Horton from all damages that might arise from unsoundness of the mule. We think His Honor was

right in refusing the instructions asked, and that the instructions given were proper.

In the case of *Baum* v. *Stevens*, 2 *Ire.* 411, the late Chief Justice Ruffin, in speaking of a parol warranty, says : "We think the rule is correctly laid down by Chief Justice Taylor in the case of *Erwin* v. *Maxwell*, 3 *Murphy*, 241, that to make an affirmation at the time of sale a warranty, it must appear upon evidence, to have been so intended and not to be a mere matter of judgment and opinion. It is certain that a *warrant* is not an indispensable term in contracts respecting personalty, as it is in conveyances of freehold.

It is also true that a representation simply of soundness, does not import absolutely a stipulation of the existence of that quality, but a representation may be made in such terms and under such circumstances, as to denote that it was not intended merely as a representation, but that it entered into the bargain itself.

In the case of *Ayers* v. *Parks*, 3 Hawks 59, Hall, Judge, says : "that whether an affirmation at the time of sale was intended as a warranty is a matter of fact to be left to the Judge. Of necessity, in verbal contracts," says Chief Justice Ruffin, "greater latitude must be allowed to evidence to establish the words and the meaning of parties, the evidence may consist of everything which tends to establish that the vendor meant to convey the impression that he was binding himself for the soundness of the article, and that the vendee relied on what was passing as a stipulation."

Among these circumstances, even the the tones, looks, gestures and the whole manner of the transaction, with all the surroundings, would be competent evidence for the jury to consider in making up their verdict.

The doctrine upon special contracts of personalty, and whether the question of warranty is to be decided by the Court or left to the jury with proper instructions, has been too long and too thoroughly settled in our State to be now overturned

by decisions in other Courts. We adhere to the decision of our own Court upon these questions.

This case was argued with much ability, and many authorities cited by plaintiff's counsel, and we admit that they cannot all be easily reconciled, but they fail to satisfy the Court that our discisions are all erroneous, or that His Honor erred in his instruction to the jury upon the question of warranty.

There is no error.

PER CURIAM.                                    Judgment affirmed.