GEORGE W. OSBORNE v. WILLIAM McCOY.

*Damages— Warrants of Soundness—Deceit—Authority of Agent.*

The plaintiff was employed by the defendant and another to sell some horses for him, among which was a mare which he swapped off. Afterwards he paid, without authority of defendant, damages for the unsoundness of the mare in compromise of a suit against him for a breach of warranty. He had no authority to warrant, nor did it appear that he did warrant, the mare to be sound: *Held*, that the plaintiff, in an action against the defendant for the money so paid in compromise of the suit for damages, was not entitled to recover.

This was a CIVIL ACTION, commenced before a Justice of the Peace for the county of ASHE, and brought by appeal to

the Superior Court of said county, and tried before *Bynum, J.,* at the special June Term, 1890, of said Court.

The plaintiff alleges, in substance—

1. That in 1885 the defendant and Jonathan Osborne owned a lot of horses, and that they employed him to sell and trade said horses for them.

2. That he exchanged a mare with a man in South Carolina for a mule and $10, and accounted to the defendant and Jonathan Osborne for the same.

3. That afterwards, in 1889, plaintiff was in Lancaster, South Carolina, with his own stock, and the man to whom he had traded the mare for defendant and Osborne in 1885, instituted an action against him for damages, on account of defects in said mare, and attached his horses (nine in number), and demanded $260, with interest and costs, and "the plaintiff, doing what he thought best, compromised the said suit, and paid the plaintiff therein $139, and a lawyer's fee of $2.50," besides other expenses amounting to about $10

4. That, afterwards, Jonathan Osborne paid his half of the damages thus sustained.

5. That the defendant refused to pay his half of the amount so paid by plaintiff for him, though often requested so to do.

6. "That the mare was unsound, but the fact was unknown to plaintiff at the time he traded her off, and he warranted her, and on that account he paid said damages," and he demands to be reimbursed by defendant to the amount of $75.50.

The defendant answers and—

1. Admits that he and Jonathan Osborne had horses and employed plaintiff to sell them, but denies that they authorized him to swap horses.

2. He denies any knowledge or information as to the second allegation, and says that if the same be true, the transaction was wholly without his knowledge or consent.

3. He denies any knowledge or information as to the third allegation, and says that if said compromise was made, the same was without his knowledge, consent or authority; and he denies that he or his co-partner, Jonathan Osborne, authorized the plaintiff to sell or to warrant the mare mentioned, and if it was done, or if plaintiff made any representations in regard to said mare which were false or misrepresenting, it was without the knowledge, consent or authority of the defendant or his co-partner, Jonathan Osborne.

4 and 5. The fourth and fifth allegations are admitted.

6. Answering the sixth allegation, the defendant avers that the mare mentioned therein was not one of the lot of horses turned over by this defendant and Jonathan Osborne to the plaintiff to sell for them, for a compensation of $5 per head, but she was a mare that plaintiff himself had swapped for after the said lot had been turned over to him to sell, he swapping a valuable mule for the same, worth more than he got for said mare and the boot; and defendant further alleges that if said mare was unsound he had no knowledge of the fact, and as the plaintiff does not allege that he warranted the said mare on the sale thereof, this defendant insists that he is not responsible to plaintiff, and would not have been responsible on the suit of the purchaser of the said mare.

After reading the complaint, the defendant moved to dismiss, because it did not state facts sufficient to constitute a cause of action against him, which motion was overruled.

The plaintiff, as a witness in his own behalf, testified as follows: "About June, 1885, I met McCoy and Jonathan Osborne below Charlotte; they had some horses and mules, and employed me to dispose of them; I was to dispose of them as though they were my own; McCoy was with me; in a day or two a man came and inquired for my brother; he said the mare was not what she was recommended to be, and

he wanted to rue back; I told McCoy of·it—told him if the mare was all right she was worth as much as the mule; McCoy said she was all right; I then changed for $10 to boot; a man came to me at Lancaster; wanted to swap mule for mare; told him mare belonged to McCoy; told him she was sound as far as I knew; McCoy recommended her work; swapped for ten dollars. Four years after that was there again; Sheriff came down and said he had attachment for my stock; I had been there twice; found it was the mare I was being sued for. I feed a lawyer; he told me I might gain it if I could prove soundness; he advised me to compromise, as it would cost me two or three times as much; I was sued for $260, and compromised for $139, and $2.50 to a lawyer; I settled with McCoy for the stock, and he settled with my brother; they got the proceeds of the mule; I knew nothing of the unsoundness of the mare; they allege the mare was subject to fits; the mare was worth $100 at home, sound; nothing if she had fits as alleged. McCoy said they got the mare from Jones before they started; she was a bay mare, five years old; nothing was said about McCoy selling; suppose he ·understood I had power to swap; would not have taken them otherwise. I did not warrant the mare only as far as I knew; did not·know of any unsoundness; did not hear she had fits until I came back; after I was sued I heard of it. I did not pay the damages at the request of McCoy; did not take time to write to them; my stock was attached."

There was other evidence on behalf of the plaintiff to the effect that the mare, "if sound," was worth $100, but that she was very unsound, and of this Jonathan Osborne and McCoy had knowledge.

Jonathan Osborne, for the plaintiff, testified, in substance, that he and McCoy knew the condition of the mare; that they hired his brother (the plaintiff) to trade and "make the most of the stock he could," and that no restrictions

were imposed upon him, and he and McCoy divided the profits.

Upon the conclusion of the plaintiff's evidence, the Court intimated that he was not entitled to recover, and, in deference thereto, he submitted to a judgment of nonsuit, and appealed.

*Mr. J. F. Morphew*, for plaintiff.
*Messrs. Q. F. Neal* and *W. H. Bower*, for defendant.

DAVIS, J.—after stating the facts: This is not an action for deceit in falsely representing the mare as sound, when the defendant knew to the contrary, but an action commenced before a Justice of the Peace to recover money alleged to have been paid by the plaintiff, as damages, "to a man in South Carolina," on account of a breach of warranty in the sale of an unsound horse, which he had sold, as agent for the defendant and Jonathan Osborne, with warranty.

We need not consider the question of power or authority of the plaintiff, as agent, to warrant the mare sold by him for the defendant. His own testimony, though not very clear, for it seems there were two trades, fails to show any warranty. He says he told the "man" with whom he traded that the mare belonged to McCoy, and "was sound so far as (he) I knew." This was not even an *affirmation* of soundness, as was the case in *Horton* v. *Green*, 66 N. C., 596, in which it is said, citing *Baum* v. *Stevens*, 2 Ired., 411, and *Erwin* v. *Maxwell*, 3 Murphy, 241; that such an affirmation of soundness does not, *per se*, amount to a warranty, but may be submitted to the jury, with attendant circumstances, to say whether the affirmation was *intended* as a warranty. The plaintiff sold the mare, not *affirming* her soundness, but only saying that she was *sound so far as he knew*. If knowingly false, it might have been cause for an action of deceit, but it was no warranty. The plaintiff, in 1889, near four

years after the sale of 1885, though advised by a lawyer, to whom he paid a fee of $2.50, to compromise, had no authority from the defendant to pay the money sought to be recovered, for him, and he (the defendant) is under no legal obligation to reimburse the plaintiff for money so paid, not at his request or instance, but without authority from him, express or implied. *Meadows* v. *Smith*, 12 Ired., 18.

The plaintiff could not recover upon the evidence adduced by him, and there is no error.

No error.