E. M. ADAMS *v.* R. E. REEVES and M. C. REEVES.

A voluntary payment, with a knowledge of all the facts, cannot be recovered back, although there was no debt; a payment, under a mistake of fact, may.

If one knowing that he has no claim upon another, sues out legal process against him and seizes his person or property, and the defendant, acting upon the false representations of the plaintiff, and not being able at the time by reasonable diligence, to know or to prove that such representations are false, pays the demand, he may recover it back in a subsequent action.

If the instructions, asked on a trial in the Superior Court, and given in the precise words asked for by the Court, are so vague and obscure as to admit of two different constructions, one of which may possibly mislead the jury, it is error, and a good cause for a *venire de novo*.

(*Pool* v. *Allen*, 7 Ired. 120 ; *Newell* v. *March*, 8 Ired. 441; *White* v. *Green*, 5 Jones, 47 ; *Islay* v. *Stewart*, 4 Dev. & Bat. 160 ; *Young* v. *Jeffries*, Ibid. 216; and *Horton* v. *Green*, 66 N. C. Rep. 596, cited and approved.)

CIVIL ACTION tried before *Cloud, J.,* at Spring Term, 1872, of the Superior Court of FORSYTH county.

The action is brought to recover money which the plaintiff alleges he paid to defendants through their fraudulent representation, and paid under the compulsory process of law. On the trial, certain issues were submitted to the jury, to-wit:

1. Was J. H. Richards the agent of the defendants in the sale of the tobacco mentioned in the pleadings?

2. Did the defendants or either of them induce the plaintiff, by false representation, to pay defendants any money, the proceeds of the sale of the tobacco ?

3. What is the amount of the plaintiff's damage, if any ?

Richards, the alleged agent, in relation to his agency, among other things testified : That in a conversation he had with R. E. Reeves, one of the defendants, at Dobson, in the Summer or Fall of 1871, he asked Reeves, " Do you deny that I was your agent to buy and sell tobacco for your firm ?" That Reeves answered : " No, I will admit it before any court or jury." Again he asked him : " Did you deny that you employed me, as your agent, to sell the tobacco sold by

me to Adams (the plaintiff) as my own, and to do the best I could with it?" To which, Reeves replied, "I have never denied it"; that the conversation took place in the presence of one White. White being examined on the trial, corroborated Richards, and further testified, that he knew Reeves and that Reeves knew him, had conversations with him, &c.

R. E. Reeves, the defendant, in regard to this conversation, testified that he had a conversation with Richards at the time and place, giving a different version of it, and denying the truth of Richards' statement; but that no such man as White was present, that he hid not know him, nor had he ever seen him until the day before the trial, when he was pointed out to him as being one of the witnesses. On his cross-examination, Reeves was asked if he had not seen White with one Bass at his own house (Reeves') last Christmas; and did he not at that time offer to purchase White's crop of tobacco. Reeves recollected seeing Bass there about that time, but had no recollection whatever of White, or his offering to buy tobacco from him; nor did he ever see him at other times.

In reply to Reeves, White was recalled, and asked about being at Reeves's house, &c. Defendants objected to this question. Objection overruled. White stated that Bass and he were at the house of Reeves last Christmas; that Reeves knew him, called him by name, and offered to buy his tobacco. Bass being examined, sustained White.

It was further proved on the part of the plaintiff, that Reeves told him, the plaintiff, that Richards was not his agent, nor had any authority to sell the tobacco, nor had he any control of it. That Richards was a great scamp, and was only permitted by the firm to go along with their wagon, to visit his relations in Virginia; that Richards had practiced a fraud upon the plaintiff and himself, and offered to assist the plaintiff in bringing Richards to justice.

For the defendants, it was further proved, that they had brought suit against the plaintiff in Danville, Va., and had attached some funds of his, the plaintiff's, which were in bank ; that this suit was compromised by the plaintiff's paying the amount to defendants for the tobacco sold by Richards. The defendants insisted that the money was paid upon a compromise of that suit, and not by reason of any misrepresentation.

There was other evidence introduced, which is not material to the points involved. The instructions asked by the parties, and those given by his Honor, are fully set out in the opinion of the Court.

The jury returned a verdict for the plaintiff. Rule for a new trial; rule discharged. Judgment and appeal by defendants.

*Scales & Scales*, for appellants.
*Blackmer & McCorkle* and *Masten*, contra.

RODMAN, J. A voluntary payment, with a knowledge of all the facts cannot be recovered back, although there was no debt. But a payment under a mistake of fact may be. *Pool* v. *Allen*, 7 Ired. 120; *Newell* v. *March*, 8 Ired. 441 ; *White* v. *Green*, 5 Jones 47 ; *Marriot* v. *Hampton*, 2 Smith. L. C. 237, and notes.

And this is not the less true if the mistake as to the fact, was caused by the false representation of the defendant: provided, the plaintiff could not by reasonable diligence under the circumstances, have informed himself of the truth. It is on this principle that the plaintiff puts his right to recover in this case.

It is said however for the defendants, that money paid under compulsion of legal process cannot be recovered back, and for this is cited *Marriot* v. *Hampton, ubi sup.*, and other cases which have followed in its track. In that case the

defendant had recovered judgment against the plaintiff for a sum which plaintiff alleged he had paid, but he was unable to produce any evidence of the payment, and paid the demand, at what stage of the action does not appear; afterwards he found the defendant's receipt, and brought his action to recover back the money.

It was held, on the principle that there must be an end of litigation, that the plaintiff could not recover. The decision has been repeatedly followed, and it is settled law as a general rule, that if one compromises a demand after action brought, by paying it in whole or in part, he cannot in a subsequent action, recover back the money paid, upon any ground of which he might have availed himself as a defence to the original action. But this rule is subject to the qualifications: 1. That the process was *bona fide* sued out, and was not accompanied by circumstances which amounted to duress or extortion. 2. That the debt demanded was not false to the knowledge of the plaintiff. Probably the two qualifications are in the substance the same; but for the present purpose, the division is convenient.

In the present case, the fact which is an essential part of the plaintiff's case, viz: that Richards was the authorized agent of the defendants to sell the tobacco, would, with other facts which do not seem to be disputed, have been a complete defence in the original action.

There was no evidence of actual duress or oppression. The mere facts that the original action was begun by an attachment of property, or that property was attached in the course of it; or, that it was brought in a neighbor though foreign State, do not of themselves constitute or imply duress. We must assume that the plaintiff, although a resident of North Carolina, would have received in the courts of Virginia the same justice that he would have received in his own State. These matters are mentioned only to be put out of the way as not affecting the case. It remains

only to consider whether the second qualification of the rule above stated can be supported in law, and whether it is applicable in the present case; and in that connection the fact of the attachment of the plaintiff's property may be con- considered.

The principles stated above in the shape of a qualification to a general rule, may be stated as an affirmative proposition, thus: If one knowing that he has no claim upon another, sues out legal process against him and. seizes his person or property, and the defendant, acting upon the false representation of the plaintiff, and not being able at the time by reasonable diligence, to know or to prove that such representations are false, pays the demand, he may recover it back in a subsequent action.

As to authority, in nearly every case in which the general rule is laid down, it is coupled with the qualification—if there be no fraud. Notes to *Marriot* v. *Hampton; Hamlet* v. *Richardson*, 9 Bing. 644; *Milnes* v. *Duncan*, 6 B. & C. 679; *Tartwell* v. *Horton*, 28 W. (2 Williams) 370.

As an affirmative proposition, the cases illustrating it are clear and numerous. The leading one is *Cadaval* v. *Collins*, 4 A. and E. 858, (31 E. C. L. R.) There the plaintiff, a Spaniard, ignorant of the English language, was arrested in England at the instance of the defendant for a fictitious debt of a large amount, and to procure his liberation paid the defendant £500. Afterwards he brought an action to recover it back. The jury found that the defendant knew that his claim was false, and the plaintiff was held entitled to judgment. Patterson, J., says, " I admit in general that money paid under compulsion of law cannot be recovered back as money had and received. And further, where there is *bona fides*, and the money is paid with full knowledge of the facts, though there be no debt, still it cannot be recovered back. But here there is no *bona fides*, and on that, I ground my opinion. When a man sues to recover

back money paid under compulsion of law, it lies upon him to show that there was fraud. Has the plaintiff shown that here?" After briefly stating the facts, he says, " To say that money obtained by such extortion cannot be recovered back, would be monstrous." Applying the same doctrine to various conditions of fact are the following cases: *Pitt* v. *Combes*, 2 Ad. and Ell. 459; *Atler* v. *Backhouse*, 3 M. and W. 633; *Unwin* v. *Leaper*, 1 M. & Gr. 752; *Wilson* v. *Ray*, 10 A. & E. 82; *Wakefield* v. *Newton* 6 Q. B. 280; *Oates* v. *Hudson* 6 Excheq. 343; *Rheel* v. *Hicks*, 25 N. Y. (11 Smith) 289; *Tartwell* v. *Horton*, 2 Wms. (28 W) 379; *Gardner* v. *Mayor*, *of Troy*, 26 Bart. N. Y. 423; *Sheldon* v. *School District*, 24 Conn. 88.

These principles would be applicable to the case which the plaintiff has set up in his complaint, and which he claims to be established by the finding of the jury. We have then to inquire if such a case has been established, and if the jury were properly instructed as to the bearing of the evidence upon the issues. The defendants except to the instructions for error.

The only fact that seems to have been really disputed between the parties, is, as respects the authority of Richards to sell the tobacco, *when and where he did*, viz : on his way to Danville and before his arrival there. This question is not presented with much precision in the first issue, although it may be held sufficient. The Judge in his first instructions, leaves the question to the jury in the general language of the issue. He tells them " that they must be satisfied from the evidence that Richards was the agent of defendants, and as such authorized to sell the tobacco," meaning of course at the time and place of the actual sale. So far there is nothing erroneous or objectionable in the Judge's instructions, and if the jury had thereupon found for the plaintiff we should not have felt bound to disturb their verdict. Afterwards, however, the Judge at the request of the

plaintiff, instructed the jury as follows: "If the evidence satisfies the jury that the defendants employed Richards to go with their tobacco as their agent, and to carry the same to Pace's warehouse in Danville, Va., and authorized him to sell the same as his own, and to do the best he could with it, then the defendants would be bound by the sale made by Richards to Adams, although the contract was made at Reidsville, when Richards was on his way to Danville."

These instructions are so lacking in precision that it is difficult to put any certain construction on them. If they mean (as they may,) merely that the jury in passing on the authority of Richards to sell at Reidsville, might consider not only the direction to him to go to Danville, but also as qualifying that the direction to sell the tobacco as his own, and to do the best he could, the instructions were right.

But in that sense they would be in substance only a repetition of what the Judge had just before said. We think therefore that we must understand them as meaning and intending to convey to the jury the idea, that if Richards was ordered to carry the tobacco to Danville and sell it *there*, yet by force of the other directions to sell it as his own, &c., he had, *as a conclusion of law*, authority to sell at Reidsville; we do not think that is a *legal* inference upon which the Judge could authoritatively instruct the jury. The words taken, either by themselves or in connection with the circumstances may bear that meaning. But they do not necessarily or plainly do so. And although generally the meaning of words in a contract, whether written or oral is for the Court; yet when the proof of words is not clear and their meaning is uncertain, and may be affected by the attending circumstances, it must necessarily be left to the jury to find it. *Islay* v. *Stewart*, 4 Dev. & Bat. 160; *Young* v. *Jeffries*, Ibid. 216; *Horton* v. *Green*, 66 N. C. Rep. 596.

In such a case, the contract of the parties becomes a

mixed question of fact and law in which it is impossible to separate the elements.

With some hesitation we are of opinion that these instructions may naturally have misled the jury in their finding on the first issue. We are the more disposed to this conclusion because they were given in the words requested by plaintiff, and if a party prays special instructions, it is his duty to make them plain and precise; and if they are vague and obscure, and may as fairly be understood in a sense which would make them erroneous, as in one which would make them proper, that construction must be adopted which is against the party.

PER CURIAM.                                    *Venire de novo.*