## HENRY A. FULLER ET AL., APPELLANTS, VS. JOHN B. ROBERTS, APPELLEE.

1. Duress may consist of one's goods as well as of his person.

2. Duress of goods may exist when one is compelled to submit to an illegal exaction in order to obtain his goods from one who has them, but refuses to surrender them unless the exaction is endured.

3. Legal duress implies that a party has been unlawfully constrained by another to perform an act under circumstances which prevent the exercise of free will. The act of the party compelling the unwilling obedience of another must be unlawful or wrongful, and there can be no duress of goods in law where the act done or threatened is nothing more than what the party had a legal right to do.

Appeal from the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the Court.

*Phillips & Carter*, for Appellants.

*MacFarlane & Pettingill*, for Appellee.

MABRY, C. J.:

The proceedings in this case were commenced by appellee filing a bill against appellants to foreclose a mortgage on property situated in Hillsborough county, in this State. The mortgage sought to be foreclosed was executed by appellants, and conveyed the property therein described to appellee upon the condition that appellants should pay unto appellee, his executors, administrators or assigns, the just and full sum of one thousand dollars, with interest after maturity, evidenced by a promissory note executed by appellants

to appellee, and upon the further condition that appellants should well and truly pay and discharge all debts and liabilities of Henry W. Fuller and appellee, as co-partners doing business under the firm name and style of Fuller & Roberts, and all debts and liabilities of Henry A. Fuller, Henry W. Fuller and appellee, doing business in the firm name of H. A. Fuller, and also indemnify and save harmless appellee from all notes, debts or demands of whatever nature, for the payment of which he had become, or might become liable on account of his said business connection with appellants, or either of them. There were covenants as to insuring the property mortgaged, and as to paying attorney fees in the event of foreclosure, not necessary to be mentioned.

Appellants answered the bill, and alleged in substance that on the first day of October, 1887, appellee and Henry W. Fuller entered into a partnership under the firm name and style of Fuller & Roberts, appellee putting into the business $4,400, and becoming a full and equal partner entitled to one-half of the profits, and liable for one-half of the losses, and that he had charge of the books and office work of the business, and made personally, or supervised the making of all entries in said books; that said business, by reason of depression caused by yellow fever and losses in purchasing oranges, became insolvent in April, 1888, the nominal assets at that time amounting to $32,000, and the liabilities to $30,000; and appellee and Henry W. Fuller being indebted to Henry A. Fuller in the sum of $12,000 for money advanced and liabilities assumed and guaranteed by him, sold to him the stock of goods and merchandise amounting to $14,495.48, in payment of the indebtedness to him; his intention being to pay up all indebtedness of said firm and protect the credi-

tors thereof; that at the time of said sale it was agreed
between appellee and appellants that Henry W. Fuller
and John B. Roberts should give their time, attention
and services to the business to be carried on in the
name of H. A. Fuller, in return for which they were
to receive one-third of the profits, if any, and bear
one-third of the losses, if any, and that the office of
said business and the books belonging thereto were in
charge of appellee, Roberts; that about April 9th,
1889, appellee found the business was losing money,
and demanded a settlement and winding up thereof
instanter, and appellants told him to wait until the
end of the month, when they would take stock and
settle with him; that appellee apparently agreed to
this, but appellants believe, and so charge, that he
never intended to have the settlement, and he was at
that time in consultation with counsel in reference to
instituting proceedings which he afterwards did insti-
tute; that on the 29th of April, 1889, he filed his bill
asking for a dissolution of the partnership, and also
praying for an injunction to restrain appellants from
interfering with said business, and for the appoint-
ment of a receiver to take charge of the same, setting
up in said bill as grounds for the relief prayed, that
appellants had made false entries in the books in order
to defraud appellee, and that said business had made
large profits and was indebted to him in the sum of
$3,000, and other grounds; that the bill was presented
to the chancellor without notice to appellants, and the
injunction was granted and a receiver appointed to
take charge of said business; that the statements in
the bill were false and untrue, and appellee well knew
them so to be at the time he filed the bill, and he knew
that within a few days after the filing of his bill there
would fall due certain notes and acceptances of the

firm of H. A. Fuller, and the firm of Fuller & Roberts, to the amount of $3,000, and that if they were not paid the business would be compelled to fail; and appellants believe, and so charge, that appellee knowing these facts instituted his said proceedings for the purpose of defrauding and cheating them and the creditors of said firms; that appellants went to appellee and informed him that they were willing to make any settlement with him possible, and offered to give good and sufficient surety for any amount that might be found due him upon an examination of the books by any competent book-keeper that he might select, but that appellee replied that he knew there was due him the sum of $3,000, and that he would do nothing unless that amount was paid him; that appellants being in the position they were, and knowing that if said business continued in the hands of a receiver until settlement could be reached, there would be entailed upon the business a large loss, as it was at that time barely solvent and its assets could only by judicious management be made to meet its liabilities, and if the receivership continued, not only would appellants lose, but the creditors would suffer; that being so situated, and in order to save the creditors of the firm and themselves, appellants gave to appellee their promissory note for $1,000 payable six months after date and assumed the liabilities of the firm of Fuller & Roberts, and in order to secure the payment of said note and the liabilities of said firm they executed the mortgage mentioned in the bill of complaint; that afterwards, upon examination of the books of the business of H. A. Fuller, and which had all the time been under the control of appellee, it was found that said business had lost the sum of $3,000, of which appellee was

8

responsible for $1,000, and that he was entitled to nothing at the time appellants executed to him the said note for $1,000 and the mortgage to secure the same, and he was largely indebted to said business; and further, appellants say that said note was given under duress, and under a mistake as to the true status of said business, and was without consideration. Exceptions were sustained to the answer, and the defendants therein declining to further answer, decrees *pro confesso* and final were regularly entered, and the case is before us on appeal from all the decrees.

The only question presented here relates to the ruling of the court sustaining the exceptions to the answer, and as this ruling was before the decree *pro confesso* was entered, the action of the court in the particular mentioned is fully open for investigation. Garvin vs. Watkins, 29 Fla. 151, 10 South. 818. The sole contention here on behalf of appellants is, that the note was executed under duress. It is further stated in the answer that the note was executed under a mistake as to the true status of said business, and was without any consideration; but it is not averred that appellants did not have free access to the books of the copartnership, and did not have it in their power to inform themselves of the true status of affairs before giving the note. Sheldon vs. School District, 24 Conn. 88. The allegation that appellee kept the books and had charge of the office work of the business, does not imply that the other partners did not have a full opportunity of obtaining all information they desired in reference to the status of the business. We confine ourselves to the point presented, which is, that the note was executed under duress. From the recitals in the mortgage, made a part of the bill of complaint, and the answer, it sufficiently appears that ap-

pellants executed the note and mortgage to appellee in settlement and adjustment of an interest claimed by him in a partnership business in which they had been engaged. The answer alleges that appellee claimed three thousand dollars as due him from the partnership business in which it is made to appear he was interested as a partner, but that he accepted the note secured by mortgage for one thousand dollars. It is also made to appear that the note and mortgage were executed after appellee had filed his bill to dissolve the partnership and had secured the issuance of an injunction against appellants and the appointment of a receiver to take charge of the partnership business. It is the settled general rule that if one compromises a demand after action brought on it against him by paying it in whole or in part, he can not in a subsequent action recover back the money paid, upon any ground available to him as a defense to the original action. This rule rests upon the sound principle that there should be an end of litigation, and it has been generally applied by the courts. Marriot vs. Hampton, 3 Smith's Leading Cases, 1686 and notes, S. C. 7 Term Rep. 269; 2 Esp. 546, 4 Rev. Rep. 439; Adams vs. Reeves, 68 N. C. 134. This general rule is subject, however, to qualifications. The process of the law must be *bona fide* sued out and not accompanied by circumstances which amount to duress or extortion. In Adams vs. Reeves, *supra*, it is said: "If one knowing that he has no claim upon another, sues out legal process against him and seizes his person or property, and the defendant, acting upon the false representations of the plaintiff, and not being able at the time by reasonable diligence, to know or to prove that such representations are false, pays the demands, he may recover it back in a subsequent action." It is upon this ground

116 SUPREME COURT.

Henry A. Fuller et al. v. John B. Roberts.—Opinion of Court.

that appellants rest their defense in the present case. It is not alleged or claimed that there was any duress of the person, but it is insisted that there was a duress of goods, hence that character of duress only is considered. There is no doubt but that there may be such a thing as duress of goods. In the case of Collins vs. Westbury, 2 Bay, 211, S. C. 1 Am. Dec. 643, it is said: "So cautiously does the law watch over all contracts, that it will not permit any to be binding but such as are made by persons perfectly free, and at full liberty to make or refuse such contracts, and that not only with respect to their persons, but in regard to their goods and chattels also." Duress of goods may exist, when one is compelled to submit to an illegal exaction in order to obtain them from one who has them, but refuses to surrender them unless the exaction is endured. This is the definition of duress of goods given by Judge Cooley in Hackley vs. Headley, 45 Mich. 569. In Cobb vs. Charter, 32 Conn. 358, S. C. 87 Am. Dec. 178, it was held that whenever money is paid under a necessity to obtain possession of goods illegally withheld, and where the detention is fraught with great immediate hardship, or irreparable injury, the payment is compulsory, and the money so paid may be recovered back in an action of assumpsit. A pawnbroker refused to deliver goods held by him in pawn until he was paid unjust and excessive interest. The owner paid the demand made on him in order to obtain possession of his property, and was permitted to recover back the excess. Astley vs. Reynolds, 2 Strange, 915. The authorities are abundent in support of the proposition that where a party has possession or control of the goods of another and refuses to surrender them except upon compliance with an unlawful demand, and there is no other speedy way left the

owner of extracting them and saving himself from irreparable injury, but by paying money or giving a note, his doing so will be regarded as done under compulsion. Thurman vs. Burt, 53 Ill. 129; Spaids vs. Barrett, 57 Ill. 289, S. C. 11 Am. Rep. 10; Vyne vs. Glenn, 41 Mich. 112; Beckwith vs. Frisbie & Sons, 32 Vt. 559; Harmony vs. Bingham, 12 N. Y. 99, S. C. 62 Am. Dec. 142; Chamberlain vs. Reed, 13 Maine, 357, S. C. 29 Am. Dec. 506; Adams vs. Schiffer, 11 Colo. 15. And so the payment of money by a person to free his goods from an attachment sued out for the purpose of extortion by one who knows that he has no valid cause of action, has been held to be under duress. Chandler vs. Sanger, 114 Mass. 364, S. C. 19 Am. Dec. 367; Collins vs. Westbury, 2 Bay, 211, S. C. 1 Am. Dec. 643; Adams vs. Reeves, 68 N. C. 134, S. C. 12 Am. Rep. 627; Spaids vs. Barrett, *supra*.

In his work on Torts (page 507) Judge Cooley says: "Duress of goods consists in seizing by force or withholding from the party entitled to it the possession of personal property, and extorting something as the condition for its release, or in demanding and taking personal property under color of legal authority, which, in fact, is either void or for some other reason does not justify the demand." Legal duress implies that a party has been unlawfully constrained by another to perform an act under circumstances which prevent the exercise of free will. The act of the party compelling the unwilling obedience of another must be unlawful or wrongful, and there can be no duress of goods in law where the act done or threatened is nothing more than what the party had a legal right to do. Hackley vs. Headley, *supra*; Wilcox vs. Howland, 23 Pick. 167. We do not think the facts stated in the answer of appellants make a defense upon the

ground of duress of goods within the principles of law applicable to that subject. The answer, taken in connection with the mortgage, the execution of which is admitted, shows a settlement between partners in which one was to have a certain sum of money in lieu of an interest claimed in the business, and a guarantee on the part of the others to save him harmless from any partnership liability. The note for one thousand dollars represents the amount to be paid in money, and the mortgage contains the agreement as to the guarantee against partnership liability. The purpose of the suit instituted by appellee against appellants was, as shown by the answer, to dissolve and wind up a partnership then existing between the parties, and for this purpose to place the partnership property in the hands of a receiver. By executing the note and mortgage appellants secured to themselve complete control of the business in which it is admitted appellee was interested as a partner, and he thereby parted with the right to ever have a partnership settlement as between him and his former associates. The answer alleges that the note was executed under duress, but no such allegation is made in reference to the mortgage and the certificate of acknowledgment attached thereto, made by a notary public, recites that appellants acknowledged the execution of the mortgage as their free act and deed and for the purposes therein mentioned. The note and mortgage show the terms of settlement or compromise between the parties, and are parts of one and the same transaction. If appellee through the means of legal procedure caused appellants, goods to be taken from their custody when he knew that he had no cause for such action, and they had no speedy way of saving their property from serious loss except by giving a note and mortgage they

JANUARY TERM, 1895.        119

Henry A. Fuller et al. v. John B. Roberts.—Opinion of Court.

would have a good defense thereto within the principle of the authorities above cited. But we do not see that such is the case presented by the record before us. The answer does allege, substantially, that appellee filed a bill asking for the dissolution of an existing partnership, praying for an injunction and the appointment of a receiver to take charge of the business, and setting up as grounds for the relief prayed that appellants had made false entries in the partnership books, and the business had made large profits, and other grounds; that the statements in the bill were false and untrue, and were well known to appellee so to be when he filed the bill, and that he knew certain notes and acceptances of the partnerships would fall due within a few days thereafter, and if not paid, the business would have to fail; and appellants believed, and so charged, that appellee knowing the facts instituted his proceedings for the purpose of defrauding and cheating appellants and the creditors of said firms. The other grounds contained in appellee's bill are not stated. It is doubtful whether appellants intended to allege in their answer that any other statements in appellee's bill were false and known to him to be such, except those in reference to the profits of the business and the false entries in the books, upon which the special relief was based, but if it be conceded that the answer is to have a broader meaning, it is apparent that it contains other allegations affording sufficient grounds for a *bona fide* resort to a court of equity for the purpore of dissolving the partnership and having its affairs settled up. The partnership existing at the time was at will, no time appearing to have been fixed for its continuance, and appellee demanded a settlement which was not acceded to. Story on Partnership, sec. 269. As appears from what is stated in the an-

swer, the business had been unprofitable and was then losing money, and it appears there was sufficient foundation for appellee to exercise a legal right in asking a court of equity to take jurisdiction of the subject-matter of the suit. The foundation for a resort to the court is disclosed by the answer itself. Whether the bill was technically correct, or sufficient in all its allegations, does not now concern us, as facts are shown to exist which afforded grounds for invoking the exercise of an undoubted jurisdiction of the court in winding up a partnership transaction in which all the parties were interested, and as to which a disagreement existed between them. If the resort to the court on the part of appellee to dissolve and wind up the partnership business was the exercise of a legal right, then there was no such wrongful act on his part as to put the appellants under a duress of goods. The allegation in the answer that the note was executed under duress, must be considered as a conclusion from the facts alleged, and, as stated, the note and mortgage containing the agreement of indemnity against partnership liability, were executed in compromise of appellee's claim of interest to the extent of three thousand dollars in the partnership business. Appellants can not reap the benefits of a part of the settlement by holding on to the partnership business, and repudiate another part by insisting that it was entered into under duress.

The case presented by the answer is not one, as insisted by counsel for appellants, where a party knowing that he had no cause of action resorted to legal proceedings for the purpose of seizing the property of another, and thereby extorting money or other thing of value from the owner in order to get the property released, but as shown by the answer itself, there was

sufficient basis of right in the appellee in this case to resort to the court of equity for an adjustment of the partnership affairs between him and his associates.

We think the court decided correctly in sustaining the exceptions to the answer of appellants, and the result is, that the decree must be affirmed, and it is so ordered.