THORNAL, Justice.
Appellant Darracott, a real estate broker suing for a commission, 'appeals from an adverse ruling of the trial Judge in favor of the defendant-owners upon a motion for summary judgment. ' .
By his complaint the appellant, plaintiff below, alleged that he held a “listing” on certain property owned by the appellees, and that he' was to receive a commission for producing a purchaser ready, willing and able to buy on the terms stipulated. He further alleged that after continuous negotiations, he did secure a purchaser who bought a part of the tract and that upon the closing of the transaction, he became entitled to a commission on the sales price of the part sold. Suit was filed when the ap-pellee-owners refused to pay the commission.
Appellees deny that the sale of a portion of the land resulted from continuous negotiations conducted by the appellant and contend that the sale was not produced by his efforts. The testimony and stipulation reveal that the tract consisted of 27 acres of citrus grove which the appellees offered for $75,000. Appellant contacted the County Board of Public Instruction and through a misunderstanding represented that the land consisted of 37 acres. The Board declined to pay $75,000, and the' owners, through the broker, thereupon submitted a price of $71,500 net. When the Board expressed interest in buying the "property at the lower price, the error in the.representation as to total acreage was discovered and the Board then refused to buy. The appellant-broker reported the situation to the appellee-owners and advised them that he thought he could sell 10 or 15 acres but that the Board did not want the entire tract unless they could get 37 acres as originally represented through mistake.
When the broker mentioned selling part of the tract, one of the owners who was speaking for both of them testified, “I told him that was all off, I wouldn’t do it at all.” Whereupon the broker replied, “Well, he’d like to have sold it but he couldn’t do it unless he could split it, give them what they wanted and keep the rest.” The owner thereupon advised the broker that he was not interested in selling part of it at all and the broker in turn so' notified the School Board, and so far as the record reveals, had nothing further to do with the transaction.
The owner then stated that after “the matter of selling the property was entirely forgotten,” he was contacted by an appraiser for the School Board, who apparently was making an appraisal preliminary to condemnation proceedings. The Board requested a conference with the owner and two or more conferences resulted. The owner advised the Board that he did not want to sell a part of his property. Whereupon the Attorney for the School Board notified him that he had the condemnation papers all ready and all he had to do was file them.
. After some further negotiations in conversations with reference to condemnation, the defendants did sell 15 acres to the School Board for $45,000. The appellees repeated several times .that they did not wish to sell a part of the property and further stated that the only reason they did sell it was because of the threats of the exercise of the power of eminent domain.
Agreeing with the appellees that the broker did not, through his continuous efforts, produce the purchaser and the further contention that the sale resulted from the threats of eminent domain rather than from the efforts of the broker, the trial Judge, on a motion for summary judgment, found for the appellees and against the broker. We hold that the trial Judge ruled correctly.
Appellant relies principally on Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, to sup *721 port his position that if a counter-proposal is offered by a prospective purchaser produced by the broker and the owner accepts the counter-proposal, he is thereupon bound to pay a commission to the broker provided the broker has brought the parties together and the ultimate sale results from continuous negotiations conducted by the broker. This case is not applicable for the reason that in the case at bar the broker discontinued negotiations. He never offered or received a fixed counter-proposal for sale of part of the tract. There was a lapse of thirty to sixty days between the time that the owner rejected the suggestion that the broker might sell a part of the land and the time that the School Board on its own initiative set in motion proceedings to condemn the property. The record sustains the conclusion that the broker discontinued rather than continued the negotiations and that he notified the School Board accordingly.
Appellant further relies on the proposition that the appellees cannot claim duress as the coercive influence that forced them ultimately to sell. He grounds this position on Fuller v. Roberts, 35 Fla. 110, 17 So. 359. It is true that in considering duress from the standpoint of setting aside a transaction brought about by coercive pressure there can be no duress in law where the threatened act is nothing more than the party has a right to do under the law. We do not have here, however, a case involving an effort to set aside a transaction based upon duress. The case before us simply presents the question of whether the broker procured the salé or whether the sale resulted from some other factor independent of the broker’s efforts.
So far as this record reveals this sale resulted entirely from the pressure exerted by the' School Board through threats of eminent- domain with immediately present evidence of the intent of the Board to carry out the threat. It is our view that this case is substantially controlled by our decision in Shuler v. Allen, Fla.1955, 76 So.2d 879, 882, where we commented upon Taylor v. Dorsey, supra, and held as follows:
“The broker in this case is not protected by the rule set forth in Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, to the effect that if the broker has brought the parties together and the sale-is effected as a result of continuous negotiations inaugurated by him, he will be nevertheless entitled to his comrriission even though the -sale eventually consummated is on terms and at a price different from those in the original listing or under the original employment. Continuous negotiations, as used in this decision, and as referred to in many others, means continuous negotiations between the seller and the prospective purchaser conducted by the broker. It is a rule that is fair to both. The requirement of continuous negotiations is not complied with when the broker conducts his negotiations with the purchaser ' alone unless the seller participates in such negotiations or at least has knowledge of the fact that such negotiations are going on. To establish any other rule would result in manifest injustice and subject the owner of real estate to continuous and unwarranted liability and result in oppression. When the broker concluded the presentation, of his testimony, he made no contention that he had placed the sellers on, notice that he was continuing negotiations with the prospective purchasers or that the sellers had any knowledge whatever concerning such fact." (Emphasis added).
In the same opinion, Shuler v. Allen, supra we quoted from the case of Cobb v. Saucier, La.App.1947, 30 So.2d 784, as follows :
“ '* * * “On the other hand, this court has with equal consistency always held that, where a broker has failed to effect a sale, and negotiations have ceased or been broken off, the owner may take up the negotiations where they were left off and himself complete the sale, and the mere fact that the ■sale may in some degree have been aided by the previous efforts of the broker does not of itself entitle the latter to -a *722 commission; i. e., unless it clearly áp-pear that those efforts were in fact the procuring cause of the sale.” ’ ”
The record before us sustains the conclusion of the trial Judge that the relationship between the broker' and the owners terminated when thé owners rejected the suggestion that the broker undertake to negotiate for a sale of a- part of the tract and that the ultimate sale was brought about, not through the procuring efforts of the broker but rather through the persuasive influence of threats of eminent domain. It can hardly be concluded that the broker had anything at all to do with the owner’s ultimate decision to sell.
Finding no error, the judgment of the lower Court is, therefore, affirmed.
DREW, C. J., and, TERRELL, HOB-SON and O’CONNELL, JJ., concur.
THOMAS, J., dissents.
ROBERTS, J., not participating.