180 So.2d 503 (1965)
CORPORACION PERUANA de AEROPUERTOS y AVIACION COMERCIAL, a Peruvian corporation, Appellant,
v.
James W. BOY d/b/a Carolina Aircraft, Appellee.
MARROU y CIA, S.A., a Peruvian corporation, Appellant,
v.
James W. BOY d/b/a Carolina Aircraft, Appellee.
Nos. 4855, 4861.
District Court of Appeal of Florida. Second District.
August 20, 1965.
As Amended on Denial of Rehearings December 10, 1965.
*504 Richard R. Booth of Walters, Moore & Costanzo, Miami, for appellants.
S. Robert Zimmerman, Pompano Beach, for appellee.
GERALD, LYNN, Associate Judge.
This is an appeal of two (2) cases tried on the same day with similar factual situations. Both cases center on certain checks given by the Defendant, BOY, to secure the release of three (3) airplanes owned by him and leased to a private corporation in Peru. The Lease Agreement between the Defendant, BOY, and his Lessee recited that it was executed pursuant to an International Agreement to which both Peru and the U.S. were parties. The Lease was recorded in both Countries and provided that ownership resided in BOY. The parties will be designated as they appeared in the Trial Court.
The record reveals that an agency of the Peruvian Government known as CORPAC, and other creditors of BOY'S defunct Lessee seized the three (3) airplanes owned by the Defendant and leased to the private corporation, for taxes and debts while the planes were in Peru. The Defendant, in the face of what he maintained was an illegal embargo, secured the release of the airplanes through the assistance of a local attorney in Peru and the use of two (2) checks drawn on his business account in a North Carolina Bank.[1] Once the Defendant had returned to the United States with the planes, he stopped payment on both checks.
The Defendant relied in both cases on the defense of duress, and failure of consideration. As an additional defense to the second suit, Defendant alleged the Plaintiff was not a holder in due course of the check because of actual or imputed knowledge of an infirmity in the instrument. The Plaintiff in the first suit did not contend that it was a holder in due course. Both cases were tried without a jury and resulted in a finding for the Defendant.

CASE NO. 4855
The law in this State is established that as against a person not a holder in due course, a Defendant has the right to avoid a contract or other act on the ground of duress of person or duress of goods. 4 Fla.Jur. Bills, Notes & Checks, Section 145; Fuller, et al v. Roberts, Fla. 1895, 35 Fla. 110, 17 So. 359. In the Fuller case, Chief Justice Mabry stated the following:
"The authorities are abundant in support of the proposition that where a party has possession or control of the goods of another, and refuses to surrender them except upon compliance with an unlawful demand, and there is no other speedy way left the owner of extricating them, and saving himself from irreparable injury, but by paying money or giving a note, his doing so will be regarded as done under compulsion."
*505 In another early Florida case, Herald, et al v. Hardin, Fla. 1928, 95 Fla. 889, 116 So. 863, the Florida Supreme Court defined duress as follows:
"Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition."
There can be no legal duress, however, unless the act of the party compelling the obedience of another is unlawful or wrongful; Fuller, et al v. Roberts, Fla. 1895, 35 Fla. 110, 17 So. 359, and the burden of proof to show duress and the illegality of the embargo is on the Defendant. Hough v. Menses, Fla. 1957, 95 So.2d 410.
The primary issue in the first case is whether the evidence was sufficient to establish the illegality of the embargo. As the record stands, the following was submitted to the Trial Court to support the Defendant's contention that the embargo was illegal:
1) The testimony of the Defendant that it was illegal.[2]
2) Admissions by one Gamero identified as the manager of the Plaintiff-Corporation to the Defendant that he (Gamero) was aware that the embargo was against the Lessee and not the Defendant, and that the Defendant was not obligated to pay the Lessee's indebtedness.[3]
3) A Lease Agreement entered into between the Defendant and a private Peruvian corporation which had been registered in the U.S. and Peru, and which referred to and incorporated a Treaty between the U.S. Government and Peru.[4]
4) A letter, or memo, from Defendant's Peruvian attorney to the Plaintiff dated August 5, 1959, wherein it was stated that the planes had been "unlawfully embargoed" for the indebtedness of the Lessee, but offering a settlement to the Plaintiff in view of the urgency for the owners to obtain the release of the planes.[5]
To support the Plaintiff's contention that the embargo on the planes was legal, the following must be considered:
1) The presumption in law that an act taken by a government agency, even the agency of a foreign government, is according to law and regular in every respect. 31A C.J.S. Evidence § 146.
2) The testimony of the Defendant's Peruvian attorney in response to written interrogatories.[6]
We hold that the evidence submitted to the Court to show the illegality of the embargo was clear and convincing and thus, we will not interfere with the Trial Court's findings.
*506 Plaintiff further contends on this appeal that Defendant failed to specifically plead and prove the law of Peru and thus is prevented from introducing evidence as to the illegality of the embargo. Since the Plaintiff failed to object to the evidence presented by the Defendant on the ground at the time of trial, we will not consider the same at this late date. Lineberger v. Domino Canning Co., Inc., Fla. 1953, 68 So.2d 357; Marsh v. Sarasota County, et al, Fla. App. 1957, 97 So.2d 312; Frank v. Pioneer Metals, Inc., Fla.App. 1960, 121 So.2d 685.
Plaintiff also contends that the lower Court committed error in failing to grant the Plaintiff's Motion for New Trial on the basis of an Affidavit by the witness Gamero attached to the Plaintiff's Motion wherein Gamero denied that he had made certain statements or admissions to the Defendant regarding the illegality of the embargo. We do not find that the Affidavit supports any of the grounds set forth in Plaintiff's Motion. Moreover, even if Plaintiff had based his Motion on newly discovered evidence under the exception set forth in Drew v. Chambers, Fla.App. 1961, 133 So.2d 589, the Affidavit was insufficient to establish perjury on the part of the Defendant.
We are aware that there is language used in certain decisions of the Courts of Pennsylvania that seem to stand for the principle that there can be no duress where the party claiming duress has had an opportunity to consult an attorney, in absence of actual bodily injury. Palatucci v. Woodland, 1950, 166 Pa.Super. 315, 70 A.2d 674; Smith v. Lenchner, 1964, 204 Pa.Super. 500, 205 A.2d 626.
However, we do not subscribe to such a broad principle or rule of law. Certainly the opportunity to consult an attorney is a factor for the Court to consider and weigh along with the other evidence in the case, but it does not foreclose a finding of duress.
Affirmed.

CASE NO. 4861
The facts of this case are similar to the first case. However, it is the position of the Plaintiff "MARROU", that it was a holder in due course of one of the checks issued by the Defendant, BOY, and is therefore, not charged with knowledge of the defense of duress.
The evidence at trial showed that the Defendant completed the major portion of the check but left the name of the payee in blank, and then gave it to a man by the name of Pallete. The Defendant testified that he knew Pallete, had seen him in the Plaintiff's place of business, and had carried on business with him as a representative or employee of the Plaintiff.
After giving the check to Pallete, the Defendant testified that he told Pallete to complete the check by making it payable to whomever Pallete was instructed to by the taxing authorities; but Pallete placed his own name on the check and then exchanged it for another check payable in Peruvian currency. In this way, Pallete was able to make $54 for himself on the exchange of the checks. Defendant also testified that Pallete knew at the time he was given the check that the Defendant was going to stop payment on the check, but Pallete had told the Defendant that he could take steps to protect himself.
It is the Defendant's contention, in view of the unrebutted testimony at trial, that Pallete was an employee of, or a part owner of the Plaintiff-Corporation, and therefore, the knowledge of Pallete was imputed to the Plaintiff and prevented Plaintiff from being a holder in due course. Plaintiff, however, contends notice will not be imputed to the Plaintiff where the testimony shows that the agent is acting adversely to the principal, or acting for himself.
The Defendant's own testimony, if believed, would show that Pallete was acting adversely to the Plaintiff when he negotiated a check to Plaintiff-Corporation upon which he knew payment would be stopped. *507 In view of this testimony, the payee's knowledge should not be imputed to the Plaintiff and judgment should have been entered in favor of the Plaintiff. 4 Fla.Jur. Bills, Notes & Checks, Sec. 109. We therefore agree with the Plaintiff's contentions.
The judgment of the lower Court in favor of the Defendant is hereby reversed and remanded for entry of an appropriate order consistent with this decision.
Reversed.
ALLEN, C.J., and SHANNON, J., concur.
NOTES
[1] The first check was for the sum of $4,000, and the second for $4300. The testimony in the record shows that even after he had given the checks, the Defendant finally was forced to fly one of the airplanes out of Peru under gunfire.
[2] Plaintiff objected to this testimony, but did not assign the overruling of his objection as error. Furthermore, it is recognized in cases submitted to a Court without a jury, the rule excluding opinion testimony involving questions of law may be relaxed. 20 Am.Jur.Evid., Sec. 799.
[3] These admissions were introduced through the Defendant's testimony. No question was raised in the lower Court, or on this appeal, as to the status of Gamero. Furthermore, counsel for the Plaintiff introduced testimony which also identified Gamero as the manager of the Plaintiff-Corporation.
[4] Convention on the International Recognition of Rights in Aircraft, Sept. 7, 1949, 4 UST 1830.
[5] The weight of this testimony on this side of the ledger is certainly diminished by the following testimony of this same witness in answer to written interrogatories submitted by Plaintiff and offered on its behalf:

"Those embargoes were against the CAMSAC (the Lessee), but according to Peruvinn law, to send out, out of the Country the planes, BOY was obliged to pay and release those embargoes."
[6] Quoted in 5 above.