GLICKSTEIN, Judge.
This is a timely appeal from a final judgment following a jury trial and order denying new trial. We affirm.
Appellants, Linda Mahan and Larry Ma-han, her husband, brought an action based on personal injuries sustained by Linda on June 24,1977, when a fight erupted at a bar known as “Ricky D’s Lounge” in West Palm Beach, Florida, and spilled over into an area where she was seated with her husband. In the fracas the participants fell onto the table where the Mahans were situated, and the table shifted, pinning the injured appellant against the booth.
Appellants alleged in their complaint, in essence, that the club owner breached his duty to provide a safe place for his customers, including appellants, by allowing persons of known dangerous or vicious propen *403 sities to frequent the bar and to remain there after it became obvious that a fight was about to erupt. They also alleged that the owner failed to break up and control the fight, failed to warn appellants of the danger, failed to provide adequate protection and security and neglected to anchor the table where the incident occurred properly to the floor.
Appellants raise one point on appeal: WHETHER THE LOWER COURT ERRED IN DENYING APPELLANTS’ TIMELY MOTION FOR NEW TRIAL WHICH DEMONSTRATED NEWLY DISCOVERED EVIDENCE INDICATING THAT PERJURY HAD BEEN COMMITTED BY A CRUCIAL WITNESS FOR APPELLEES CONCERNING TESTIMONY WHICH WAS DEVASTATING TO APPELLANTS’ CASE, THUS DEPRIVING APPELLANTS OF THEIR RIGHT TO A FAIR TRIAL?
If, in fact, perjury was committed by the witness in question, a new trial would be ordered forthwith without further discussion.[1] However, the trial court’s decision denying appellant’s motion for new trial can be understood by an examination of the record.
Perjury in official proceedings is defined in Section 837.02, Florida Statutes (1977):
(1) Whoever makes a false statement, which he does not believe to be true, under oath in an official proceeding in regard to any material matter shall be guilty of a felony of the third degree, punishable as provided in s. § 775.082, s. § 775.083, or s. § 775.084.
(2) Knowledge of the materiality of the statement is not an element of this crime, and the defendant’s mistaken belief that his statement was not material is not a defense.
The testimony that is alleged to be perjured is that of Dawn Karen Fogleman, appellee-club-owner’s night manager and bartender. There is no evidence that the witness had any financial interest in the business. Her testimony in question is as follows:
BY MR. MILLER: Q. Okay. All right, Now, did you ever [sic] any problems in the bar prior to this incident in which the Mahans were involved?
A. No.
MR. MASSA: Objection; move to strike. It’s irrelevant, Your Honor.
MR. MILLER: I don’t think it is.
THE COURT: In which the Mahans were involved?
MR. MILLER: I'm talking about — I'll rephrase the question. I’m talking about— prior to the night of the Mahans incident—
A. No.
Q. Wait ’til I finish the question. Did you ever have any disturbances in the bar?
THE COURT: That she knows, of her own personal knowledge?
MR. MILLER: Right.
THE WITNESS: No.
THE COURT: Objection overruled.
BY MR. MILLER: Now, you were the manager, were you not?
A. Yes.
Q. Now, did you have some nights off or something?
A. I don’t think at that time. I think I was working seven straight days.
Q. Well, if there had been some disturbance in the bar when you weren’t physically present for some reason or another as the manager, would that have been called to your attention?
A. I would have been told about it. Q. And did anyone ever report any disturbances to you?
A. No.
In fact, the witness apparently had knowledge of a prior disturbance in the bar; namely, a purse-snatching incident in May *404 1977, which is described in the affidavit of Elizabeth Theresa Owen filed in support of appellant’s motion for new trial.[2] Appellants did not learn of the prior disturbance because they failed to ask Elizabeth Owen at her deposition whether there had been any prior fights or other kinds of disturbances in the bar. The only inquiry of Dawn Fogleman at her deposition was as follows:
Q. Had you had any other problems in Ricky D’s Lounge prior to this incident— A. No.
Q. —similar to that night?
A. No.
Q. Any kind of fights starting?
A. No. It was a nice bar.
Q. Okay. So, this was the only incident that you can recall?
A. Right.
There are three matters that concern us in considering appellants’ right to a new trial. The first is the principle recited in Vining v. American Bakeries Co., 121 Fla. 116, 119-120, 163 So. 396, 397-398 (1935).
The general rule is that courts should look with disfavor upon applications for new trial upon the ground of newly discovered evidence, because to look with favor upon such proceedings would bring about a looseness in practice and encourage counsel to neglect to gather all available evidence for a first trial by speculating upon the verdict, and then, being defeated, become for the first time duly diligent in securing other evidence to cure the defects or omissions in their showing upon the first trial, (citation omitted).
The second is a corollary of the first; namely, the availability of the evidence had counsel’s pre-trial inquiry of the witnesses he deposed been complete. See Ganey v. Goodings Million Dollar Midway, Inc., 360 So.2d 62 (Fla. 1st DCA 1978).
Finally, we are convinced, as a matter of fairness, that the record supports the trial court’s conclusion that Dawn Fogle-man did not knowingly give false testimony. Prior to trial the appellants never asked Dawn Fogleman whether such a disturbance occurred at the bar prior to June 24, 1977. She took the stand at trial and became a participant in a series of questions interspersed with remarks by the trial court and counsel for both parties. Understandably, this may have been confusing to her. Given all of the foregoing circumstances, the trial court justifiably could conclude that the witness had not made a perjured statement.
There are two primary cases on which appellants rely, and if the facts here were, in any manner, similar to the facts in those cases, the trial court would have undoubtedly ordered a new trial. In Ogburn v. Mur *405 ray, 86 So.2d 796 (Fla.1956), one of the plaintiffs testified at trial that he was earning $125 to $150 per week from Sawyer Motor Company before his accident and only $68 and then $60 per week for Abernathy Paint and Body Works after the accident. The jury awarded $8,000 to this plaintiff. After the trial defendants offered affidavits of each employer, which established the plaintiff was earning $56.69 per week prior to the accident and $80 per week afterward. In granting defendants a new trial on the issue of damages, the supreme court concluded that the closing argument of plaintiff’s counsel that his client had already lost $6500 in wages made it plain that the jury verdict would not have been the same had the true facts about his wages been presented.
Similarly, in Alston v. Shiver, 105 So.2d 785 (Fla.1958), the court ordered a new trial where at trial the plaintiff testified she could not work and defendant produced affidavits in support of a motion for new trial which established that the plaintiff had been employed for several weeks in a canning plant and worked as a laborer clearing stumps, some of which weighed one hundred pounds. The court verbalized its abhorrence and the public’s abhorrence to false testimony and to a party’s prevailing by knowingly giving or using false testimony.
The facts of this case are somewhat similar to those in Drew v. Chambers, 133 So.2d 589 (Fla. 1st DCA 1961), where the court affirmed the trial court’s denial of plaintiff’s motion for new trial. The motion had been based on alleged perjury as revealed by newly discovered evidence. The court held, inter alia, there was no proof that defendant’s testimony was knowingly false and:
. All the evidence on which the appellant now relies to show perjury was available to him prior to the trial of this cause. All such evidence could have been employed during the trial to discredit defendant’s testimony if plaintiff had seen fit to use it. No just cause or excuse is shown by this record for plaintiff’s failure to discover this evidence and utilize it at the proper time. Id. at 591.
See also, Corporación Peruana de Aeropuer-tos y Aviación Comercial v. Boy, 180 So.2d 503, 506 (Fla. 2d DCA 1965), as amended on denial of rehearings (1965).
Based on the totality of the circumstances, we affirm.
AFFIRMED.
DOWNEY, C. J., and MOORE, J., concur.

. In Van Note v. State, 366 So.2d 78, 80 (Fla. 4th DCA 1978, rehearing denied 1979), we reversed a conviction and remanded for new trial principally because
“It is very possible perjury and subornation of perjury were committed and that cannot go uncorrected.”

. “2. I was an employee, working as a cocktail waitress, at Ricky D’s Lounge from April 8, 1977 to August 25, 1977. During that period of time, I worked on a 9:00 p. m. to 3:00 a. m. shift approximately five days a week. Practically every day that I worked at Ricky D’s Lounge, Dawn Fogelman worked with me serving as the Night Manager.
“3. I was a witness in the recent trial of Mahan v. Ricky Dean, Inc. and testified on Wednesday, January 31, 1979.
“4. Although neither attorney asked me, I was aware of fights that had occurred and trouble that had occurred in Ricky D’s Lounge prior to the incident of June 24, 1977, involving the Mahans. More specifically, I recall an incident in May of 1977 in which an individual attempted to steal my purse, the purse of Dawn Fogelman, [sic] and the purse of Sally Jones, inside Ricky D’s Lounge. At that time, the doorman, Willis Natoli, attempted to restrain the individual and had to obtain assistance from other patrons of the bar to restrain the individual. The police finally arrived and because of the amount of money involved, Dawn Fogelman [sic] was requested to travel to the' West Palm Beach Police Station to give her statement. 1 traveled with her to the West Palm Beach Police Station.
“5. I have read over the transcript of the statement given by Dawn Fogelman [sic] under questioning by Attorney Miller at the Mahan trial (a copy of which is attached) and her statement that there were no disturbances or problems in this bar prior to the incident involving the Mahans is incorrect.”
With respect to that portion of the affidavit that states in paragraph 4: “I was aware of fights that had occurred and trouble that had occurred in Ricky D’s Lounge prior to the incident of June 24, 1977 . . .,” there is nothing in the record by affidavit or otherwise which specifically alleges any prior incident other than the purse snatching in May 1977.