*412
 
 Ruffin, C. J.
 

 We think the rule, on which this case depends, is correctly laid down by Chief Justice Taylor in
 
 Erwin
 
 v
 
 Maxwell,
 
 3 Murph. 241: that
 
 “to
 
 make an affirmation at
 
 the time of the
 
 sale a warranty, it must appear upon evidence to have been so intended, and not to be a mere matter of judgment and opinion.” It is certain that
 
 warrant
 
 is not an indispensable term in contracts respecting personalty, as it is in conveyances of freehold. It is also true that a representation, simply, of soundness, does not impart, absolutely, a stipulation of the existence of that quality. But the representation may be made in such terms, and under such circumstances, as to denote that it was not intended merely as a representation, but that it entered into the bargain itself If the contract be in writing, the court cannot
 
 go
 
 out of if, but must find, in its own language, the exposition of its sense; and
 
 that
 
 it is the province of the court to do.
 
 Ayres
 
 v
 
 Parks,
 
 3 Hawks 59. But in deeds, words, which in themselves import to be but words of description or affirmation, have been held to amount to a covenant, because of their inutility in the deed, as constituting merely an affirmation, and becauseof the inference from their insertion in the deed, that they were so inserted as a part of the contract.
 
 Gilchrist
 
 v
 
 Marrow,
 
 2 Law Rep. 607.
 
 Ayres
 
 v
 
 Parks,
 
 3 Hawks 59. In this last case it was also admitted, that, whether an affirmation was intended as a warranty, is a matter' of fact to be left to the jury. This, of course, refers to a transaction resting entirely in parol. The same doctrinéis also settled in New York by many cases.
 
 Duffee
 
 v
 
 Mason,
 
 8 Wend. 25.
 
 Whitney
 
 v
 
 Sutton,
 
 10 Wend. 411. Of necessity, in verbal contracts a greater latitude must be allowed to evidence to establish the words and the meaning of parties. The evidence may consist of every thing, which tends to establish, that the vendor meant to convey the impression, that he was binding himself for the soundness of the article, and that the vendee relied on what was passing as a stipulation. Among those circumstances, would, of course, be the understanding, at the time, of the byestanders, who witnessed the transaction, and the facts on which the impressions of those persons were founded. Thus if a
 
 *413
 
 person, in this case, had said, “ I will not bid, unless Stevens will warrant the negro to be sound,” and the defendant had replied “he is sound,” no one could be mistaken in taking that to be a contract, and not a mere representation of soundness, as the seller’s words, in themselves, import. So here, when a seller at auction, who, as we must suppose, was the owner and interested in the price to be had, and that the ne-groes should be bid for as sound, expressly refused to warrant one negro, and gave, as his reason therefor, “ that
 
 he
 
 was unsound,” and, immediately afterwards, in offering the next, proclaimed “here is a healthy negro;” it might not perhaps be considered as straining the words beyond their obvious and natural sense, taking the whole together, to hold, that there was a warranty of the latter negro. But, at the least, it is highly probable, the vendor so meant to be understood and so was understood, from the contrast exhibited by him in respect of the condition of the two slaves. Besides, much may have depended upon the tone and emphasis, as well as on the words of the party, and the period of his uttering them. These, we think, were all matters properly belonging to the jury, to whom they should have been submitted, with instructions that, if they collected the defendant did not mean merely to express an opinion, but to assert positively that the negro was sound, and that bidders should, upon the faith of that assertion, bid for the negro as sound, then it would amount to a warranty; otherwise not.
 

 Per Curiam, New trial awarded.