BEASLEY v. SURLES.

(Filed March 20, 1906).

*Warranty—Practice—Issues—Evidence—Question for Jury.*

1.  In an action on a note given for the purchase price of a horse, where defendant admitted the execution of the note and by way of counterclaim alleged a warranty and breach thereof, and at the close of the evidence, the court intimated that it would charge the jury that there was no evidence of warranty, defendant was relieved of the duty of tendering an issue upon that question.

2.  Rev., sec. 548, contemplates that the issues shall be drawn before the introduction of testimony.

3.  In determining whether or not language used in connection with the sale of personal property constitutes a warranty, it is proper for the jury to consider the testimony in the light of the language used, the spirit in which the parties met and all of . the other circumstances, and to find therefrom the intent with which the words were used by the seller and understood by the defendant, with proper instructions as to what constitutes warranty.

ACTION by C. M. Beasley against D. H. Surles, heard on appeal from a justice of the peace, by *Judge M. H. Justice* and a jury, at the September Term, 1905, of the Superior Court of JOHNSTON. From a judgment for the plaintiff, the defendant appealed.

Plaintiff brought suit against defendant on account of a note for one hundred and forty-five dollars executed by defendant, payable to plaintiff, consideration being the purchase of one mare. Defendant admitted the execution of the note and pleaded, by way of counterclaim and set off, that plaintiff warranted the horse to be sound and in good condition, when in fact said horse was not sound, etc. Plaintiff, after introducing the note, rested. Defendant was introduced and testified: "I went to the lot where the horse was—

plaintiff brought her out; her hips were skinned. I said 'she looks colicky.' He said he had known her ever since a colt and had never known her to be sick a day in her life. This was on Friday. I relied on his statement and bought her. Went back Monday, took her and gave note; had never seen her before. She lived three weeks and died of colic. Saw defendant next day and he said he would do what was right."

Plaintiff testified: "After some talk about buying the mare, defendant asked me if she was sound. I said I never had a thriftier horse since I had her. That Reaves said she had been sick from eating persimmons when Ennis had her. Told defendant when I got her."

There was evidence in regard to the condition of the horse, etc., which is immaterial upon the exceptions presented on the appeal.

Upon the conclusion of the testimony His Honor intimated that he would charge the jury that in no aspect of the case was there any evidence to be considered by the jury of warranty of the horse by plaintiff at the time of the sale or prior thereto. The following issues were thereupon drawn and tendered by defendant:

1. Was the horse sold by plaintiff to defendant unsound at the time of the sale? Yes.

2. Did the plaintiff represent the horse to be sound? Yes.

3. Did he at the time know or have good reason to believe that the horse was not sound? No.

4. How much damage is defendant entitled to recover for the unsoundness of said mare? Nothing.

Judgment for plaintiff. Exception and appeal by defendant.

*Wellons & Morgan* and *Murray Allen* for the plaintiff.
*Pou & Brooks* and *W. A. Stewart* for the defendant.

CONNOR, J., after stating the case: Defendant, by way of a counterclaim, alleged a warranty and breach thereof and deceit. At the close of the evidence, His Honor having intimated that he would instruct the jury, which he afterwards did, that there was no evidence of warranty, defendant's counsel did not tender an issue upon that question. Among the exceptions to the charge are the following: "1. That His Honor erred in refusing to submit to the jury an issue as to whether the plaintiff warranted the mare to the defendant in making the sale. 2. That His Honor erred in holding at the conclusion of the testimony in the case that there was no evidence of a warranty to be submitted to the jury. 3. That His Honor erred in charging the jury that there was not evidence of a warranty of the mare at the time of the sale by the plaintiff to the defendant. 4. That His Honor erred in failing to leave the question of warranty with proper instructions as to the law to the jury to find the facts as to whether the plaintiff intended to and did warrant the mare to the defendant at the time of the contract."

Plaintiff insists that the defendant having failed to tender an issue in regard to the warranty may not now urge His Honor's failure in that respect as error. While it does not very clearly appear in the record, it was stated on the argument and is in accordance with what we know to be the practice, that the issues were drawn at the conclusion of the testimony. Revisal, section 548, contemplates that the issues shall be drawn before the introduction of testimony. A custom has grown up in the courts of drawing the issues after the conclusion of the evidence. The plaintiff's contention, that the failure on the part of the defendant to tender an issue and except to His Honor's refusal is the orderly porcedure, is sustained by the authorities cited in his brief. We think, however, that His Honor having intimated that he would charge the jury that there was no evidence to sustain the allegation of the warranty, relieved the defendant of the duty of

tendering an issue upon that question. While it would have been entirely regular for him to have done so, we can see no reason why he may not present the exception to the charge as given by His Honor. We can well understand how counsel would hesitate to tender the issue in the light of the judge's declaration that he would charge the jury that there was no evidence to sustain it. It is evident from the case on appeal that His Honor did not understand that the defendant had waived the question, the exceptions being found in the case on appeal as settled by him. If the order in which the issues should have been tendered as provided by The Code, had been followed, the defendant would have tendered his issues and His Honor have ruled upon them, to which exception could have been noted. While we have no disposition to disregard or in any manner weaken the force of the rules of procedure which have been found conducive to the orderly administration of justice, we do not think they should be so construed as to unreasonably deprive parties of the right to present their controversies to this court. Upon examination of the case on appeal, we think that the defendant's exception is taken in proper time. The plaintiff, however, insists that His Honor's ruling is correct. It is often difficult to say whether or not language used in connection with the sale of personal property constitutes a warranty.

In *Horton v. Green*, 66 N. C., 596, an instruction that the jury were to consider the testimony in the light of the language used, the spirit in which the parties met and all of the other circumstances, and to say therefrom whether it was the seller's intention to indemnify the buyer from all damage which might arise from unsoundness of the property, was correct.

In *Baum v. Stevens*, 24 N. C., 411, *Ruffin, C. J.,* says: "It is certain that warrant is not an indispensable term in contracts respecting personalty, as it is in conveyances of freehold. It is also true that a representation simply of soundness, does not impart absolutely a stipulation of the

existence of that quality. But the representation may be made in such terms and under such circumstances, as to denote that it was not intended merely as a representation, but that it entered into the bargain itself. * * * The evidence may consist of everything which tends to establish that the vendor meant to convey the impression that he was binding himself for the soundness of the article, and that the vendee relied on what was passing as a stipulation. Among these circumstances, would, of course, be the understanding, at the time, of the bystanders, who witnessed the transaction, and the facts on which the impressions of those persons were founded." After further discussion, he concludes: "These, we think, were all matters properly belonging to the jury, to whom they should have been submitted, with instructions that, if they collected the defendant did not mean merely to express an opinion, but to assert positively that the negro was sound, and that bidders should, upon the faith of that assertion, bid for the negro as sound, then it would amount to a warranty, otherwise not."

In *McKinnon v. McIntosh,* 98 N. C., 89, *Davis, J.,* says: "If the vendor represents an article as possessing a value which upon proof it does not possess, he is liable as on warranty express or implied, although he may not have known such an affirmation to be false, if such representation was intended, not as a mere expression of opinion, but the positive assertion of a fact upon which the purchaser acts; and this is a question for the jury."

In the light of these authorities, we are of the opinion that His Honor should have submitted the question to the jury as to the intent with which the words were used by the plaintiff and understood by the defendant, with proper instructions as to what constitutes a warranty.

For the error in refusing to submit the question to the jury, there must be a

New Trial.