T. F. WRENN v. J. L. MORGAN AND W. A. CONLEY.

(Filed 29 May, 1908.)

### 1. Contracts—Counterclaim—Express Warranty.

When, in an action to enforce collection of a note given for the purchase price of property, a defense is made by the way of counterclaim based upon the ground of false representations, and not to set the transaction aside for mistake, it is required, to sustain the counterclaim, that defendant should establish that the trade was induced by false and fraudulent representations, reasonably relied on by defendant, or that there was a breach of a warranty given in the contract of sale.

### 2. Same — Measure of Damages — Value of Shares — Questions for Jury.

W., M. and C. owned all the shares of stock in a manufacturing corporation, of which W. had the general management. After some bargaining between W. on the one hand and M. and C. on the other, the latter agreed for a certain price to buy the stock of the former, and gave their note for it. Upon this note suit was brought by W., and M. and C. set up by way of counterclaim a demand for damages for breach of warranty. There was evidence that W. furnished or caused to be furnished to M. and C. a statement, corroborated by the books, that the indebtedness of the company was in a certain sum, but in fact it was much greater, and could not have been known or ascertained by M. and C. until after the close of the transaction. There was no evidence of fraudulent intent on the part of W.: *Held*, (1.) that it is not necessary that a warranty be made in express terms, and that an affirmation of a material fact intended and relied upon as an inducement to the trade may be sufficient; (2) there was evidence sufficient to go to the jury upon the question of express warranty; (3) the measure of damages was not the difference between the represented and actual indebtedness, but only as it affected the value of the stock bought.

CONNOR, J., dissenting.

ACTION to recover on a note for $6,000 and interest, given by defendants to plaintiff for one-third interest in a furniture factory which plaintiff and defendants had owned in common, in equal proportion, tried before *Peebles, J.,* and a jury, at September Term, 1907, of McDOWELL.

Defendants, admitting the execution of the note, set up by way of counterclaim a demand for damages for false and fraudulent representations of the plaintiff as to the amount of the company's indebtedness at the time of the trade, and for breach of warranty as to such indebtedness. At the close of the testimony the court held, in effect, that, if the evidence was believed by the jury, the plaintiff had established his claim to the amount of the purchase note and interest, and that there was no sufficient evidence on which to submit the question of defendants' counterclaim to the jury in either aspect of the demand. Verdict and judgment for plaintiff, and defendants excepted and appealed.

*Watson, Buxton & Watson* and *Shepherd & Shepherd* for plaintiff.
*Justice & Pless* for defendants.

HOKE, J., after stating the case: It is established beyond question that there was a mistake as to the amount of the company's indebtedness existing at the time of the sale, and that the trade by which plaintiff's interest was purchased was made on the basis of an existing indebtedness of $692.43, whereas in truth and in fact it was over $2,000, and that this excess has been paid by the defendants after they had bought out plaintiff's interest. As this, however, is not an effort on the part of defendants to set aside the sale for mistake, it is required, to sustain the counterclaim, that defendants should establish that the trade was induced by false and fraudulent representations of plaintiff, reasonably relied on by defendants, or that there was a breach of a warranty given in the contract of sale. A careful consideration of the testimony leads to the conclusion that there was no testimony of intentional deceit on the part of plaintiff, but we are of opinion that the question of whether there was a warranty given in the contract of sale should be considered and determined by the jury.

There was evidence tending to show that originally plaintiff and defendants, with one Landis, owned the factory, each having one-fourth interest, and at first the affairs of the company were managed by Landis. The owners, plaintiff and defendants, becoming dissatisfied with Landis, bought out his interest, making them the co-owners, each in one-third interest, and the management of the factory was turned over to plaintiff, who, with the approval of the others, put his cousin, Junius Wrenn, in active charge of the operations—the manufacture and sale of the furniture. Defendants, becoming dissatisfied with this management, began to treat for a purchase or sale, and some ten or eleven days before defendants bought out plaintiff's stock, for which the notes sued on were given, the plaintiff, as we interpret the evidence, supplied defendant Morgan with a written statement of the company's affairs, showing an indebtedness of $692.43 ; and in giving an account of the conversation when the trade was consummated between plaintiff and defendants, defendant Morgan, among other things, testified as follows: "He (Wrenn) said he would give or take $6,000. We told him · if he bought one-third he would have to buy it all. We finally bought his one-third at $6,000. We bought on the statement that the company owed $692.43. I thought it was correct, and relied upon it. Bills payable were marked on the statement at $692.43. They were over $600—somewhere between two and three thousand dollars—but this did not appear on the books or the statement furnished. Creditors began to call on us, and I wrote plaintiff to come over and straighten them out."

On cross-examination, speaking to this same matter, this witness testified: "After this inventory was made out we began to negotiate to buy or sell. Mr. Wrenn offered to sell his interest for $6,500. I offered to give him $6,000. Mr. Wrenn said he would give or take $6,000 for one-third, but he would not buy two-thirds. After this, Major Conley was present, and he and I went out and talked it over, and came

back and told Mr. Wrenn that we would accept his proposition if there was no more indebtedness than the $692.43. I did not know at that time or have any suspicion that there was other indebtedness. Major Conley and I told him that we would accept his proposition. I do not remember whether we said anything to him about any more indebtedness, or a single word. I took it for granted that the statement was correct. We wrote the note to Mr. Wrenn for $6,000 and we signed it. I took it then and turned it over to Mr. Wrenn when Mr. Wrenn delivered me the stock. I passed Mr. Wrenn's office and we exchanged papers."

There was also testimony to the effect that before the trade an inventory had been taken of the assets and debts, the manager, Mr. Ernest Wrenn, and defendants' bookkeeper taking part in this, but this additional indebtedness not appearing on the books and nothing being said about it, defendants had no means of finding out about it till after the trade. The testimony of plaintiff tended to contradict that of defendants in many material respects, but, as the counterclaim was virtually dismissed as on a nonsuit, only that making for defendants' claim is set out. *Hopkins v. Railroad,* 131 N. C., 464.

It is accepted law that to hold a bargainor in a sale responsible for a warranty it is not necessary that this should be given in express terms, but that an affirmation of a material fact, made by a seller at the time of the sale and as an inducement thereto and accepted and relied on by the buyer, will amount to a warranty. Tiffany on Sales, 162; *McKinnon v. McIntosh,* 98 N. C., 89; *Horton v. Greene,* 66 N. C., 596. In *McKinnon v. McIntosh, supra, Davis, J.,* delivering the opinion of the Court, said: "If the vendor represents an article as possessing a value which, upon proof, it does not possess, he is liable as on a warranty, express or implied, although he may not have known such an affirmation to be false, if such representation was intended, not as a mere expression of opinion, but the positive assertion of a fact, upon which the

purchaser acts, and this is a question for the jury. *Thompson v. Tate*, 5 N. C., 97; *Inge v. Bond*, 10 N. C., 101; *Foggert v. Blackmuller*, 26 N. C., 238; *Bell v. Jeffrey*, 35 N. C., 356; *Henson v. King*, 48 N. C., 419; *Lewis v. Rountree*, 78 N. C., 323; *Baum v. Stevens*, 24 N. C., 411."

And in *Horton's case* words of *Chief Justice Ruffin* on this subject are cited with approval, as follows: "Of necessity, in verbal contracts greater latitude must be allowed to evidence to establish the words and the meaning of parties. The evidence may consist of everything which tends to establish that the vendor meant to convey the impression that he was binding himself for the soundness of the article, and that the vendee relied on what was passing as a stipulation. Among these circumstances, even the tones, looks, gestures and the whole manner of the transaction, with all the surroundings, would be competent evidence for the jury to consider in making up their verdict."

Applying the doctrine as stated by these authorities, we hold that on the evidence the defendants should have been allowed to go to the jury on the question of express warranty. Defendant testified on his examination in chief that he bought on a statement supplied him by plaintiff, to whom the parties had turned over the management of the factory, that the indebtedness of the company at the time was $692.43. And again he said, in speaking of the bargain itself: "We bought on the statement that the company owed $692.43." And on cross-examination he said: "We told Wrenn that we would accept his proposition if there was no more indebtedness than the $692.43." True, the witness apparently qualifies this statement later, and may have intended to withdraw it, but the Court cannot declare this to be the case from the evidence as it now appears. If, as an inducement to the trade and intending it to be the basis of the same, the plaintiff furnished or caused to be furnished to defendants a statement showing the indebtedness at $692.43, and defendants reasonably ac-

cepted and relied and acted upon it, or if in the course of the bargain between them the plaintiff made that statement as an inducement to the trade, or it was made to him by defendants and he acquiesced in it under circumstances that by fair intendment amounted to a positive affirmation of that as a fact, and if same was accepted and relied upon by defendants, it would constitute a warranty, and this question on the testimony should be left to the jury.

If the breach of warranty is established in this connection, defendants are entitled to recover compensatory damages, as held in *Blacknall v. Rowland,* 116 N. C., 389, reaffirmed on petition to rehear in 118 N. C., 418. We do not think, however, as contended by defendants, that the question of damages would be the entire amount of the difference in the indebtedness. The plaintiff's stock was the subject-matter of sale, and the warranty is to be considered in reference to its effect upon that, and, if a breach of warranty is established, the damages would be correctly admeasured by the effect the difference in the indebtedness had on the value of plaintiff's stock which was sold to defendants.

For the error pointed out there will be a new trial, and it is so ordered.

New Trial.