### J. B. HODGES v. R. L. SMITH.

#### (Filed 21 February, 1912.)

**Vendor and Vendee—Deceit—False Warranty—Evidence—Damages —Questions for Jury.**

In an action for damages for personal injuries caused by defendant's deceit and false warranty in the sale of a horse, there was evidence tending to show that the defendant falsely represented that the horse was kind and gentle, and that plaintiff, relying thereon, bought the horse, drove him twenty-five miles to his home, and a few days thereafter, while driving him to a buggy, the horse began to kick and back and threw plaintiff out of the buggy and broke his leg: *Held*, a question for the jury as to whether defendant intended his statement as to the character

HODGES *v.* SMITH.

of the horse to be a warranty, and whether the plaintiff, relying thereon, was thereby induced to buy, and whether, under the evidence, there was deceit and a breach of warranty on defendant's. part.

APPEAL from *Cline, J.,* at October Term, 1911, of BEAUFORT.

This action was brought to recover damages for deceit and false warranty in the sale of a horse. In his answer the defendant describes himself as "a regular horse and mule dealer, conducting a sales-stable at Greenville, N. C." The following is the plaintiff's version of the facts, as given in his testimony: "I live in Beaufort County, and am a farmer and house carpenter. I know R. L. Smith, the defendant. I went to his stables in December, 1907. He has a large stable at Greenville. I saw Mr. Savage before I saw Mr. Smith. Savage was working with Smith. I told Mr. Savage that I wanted a horse, one that my father and mother could drive and that is gentle and all right. I told him that I had never bought a horse before. He showed me the horse in question and told me that he was all right. He priced the horse at $185 cash. I then saw Mr. Smith and told him about the conversation with Savage. He said he had a horse to sell; that was what he was there for. He said the horse was all right. I told Mr. Smith that I did not know anything about horses; that I wanted a quiet, gentle horse. He said that this one was a quiet, gentle horse; that any lady could drive him. I had Mr. Savage to look at my horse, and we traded. I gave $145 to boot, by mortgage on the horse traded for. Mr. Smith had the horse hitched to a break cart and driven a short distance in the stable. He said he had no buggy, but would hitch him to a cart. My brother was with me at the time. I had no experience in buying horses. I told Mr. Smith that I wanted a quiet, gentle horse that my father and mother could drive. He said this was a gentle horse that any lady could drive. I relied on what he said and did not know, except from what he said, whether the horse was gentle or not. After the trade was made, Mr. Smith had the horse hooked up and I drove him home, a distance of about twenty-five miles. The next day after that, I hitched the horse up again. Lum Whitaker was with me. We hitched him to a good buggy with a good harness, and drove him about two miles.

158—17

The next day Whitaker and I hooked him up and drove him
125 yards, when he began to run and kick and threw me out of
the buggy, breaking my leg. Whitaker stopped the horse by
pulling him into a fence. I was laid up nearly all the year.
I was in bed six weeks, flat of my back. I was then up and
down until October or November. The doctor attended me
nearly the whole time. My leg was dislocated and broken to-
gether. I was disabled the entire year, and it affects me yet.
After I got hurt, John Hodges worked the horse for me beside
an old team and broke him for me, and I drove him that fall.
The horse was not worth anything to me. I reckon he was
worth $150 or $175 on the market. I saw the horse after I got
hurt. That fall I wrote Mr. Smith a letter, in November, 1908,
and told him I could not pay for the horse and the interest on
the mortgage, and to send for him, which he did. Before I
was hurt I could do a man's work. At the time of the injury
the horse was in the main public road near my house, and threw
me out of the buggy. My doctor's bill was $100. I had to hire
a man to work at 50 cents per day and board at 25 cents per
day. The horse I traded to Smith was worth $50. I lost him
and lost my crop that year. My time was worth $1 per day.
I have not been able to do a good day's work since. Was about
24 years old when I made this trade."

At the close of the testimony for the plaintiff, the court, on
motion of the defendant, entered a judgment as of nonsuit, and
the plaintiff appealed.

*Small, McLean & McMullan for plaintiff.*
*F. G. James & Son for defendant.*

WALKER, J. The defendant, in his answer, denies the plain-
tiff's allegations, the substance of which have been set out, and
avers that he had recently bought the horse when he sold him
to the plaintiff, and not knowing his qualities, he could not have
warranted or represented that he was kind and gentle in harness,
but told the plaintiff that the person who sold the horse to him
represented him to be sound and safe, and he only expressed
an opinion to the plaintiff, based upon such knowledge as he
had thus acquired, that the horse would suit him, and that he

made no warranty and practiced no deceit. The issue thus raised by the pleadings was not submitted to the jury and the defendant offered no testimony, so that the case must be considered solely upon the evidence of the plaintiff.

We think the judge erred in ordering a nonsuit. The question involved in this case has frequently been decided by this Court against the contention of the defendant. As early as 1805, in *Thompson v. Tate,* 5 N. C., 97, it was held that a vendor of goods is liable, on an express or implied warranty, for affirming, at the time of the sale, that they possess a particular quality which would increase their value, if it turns out that the affirmation is not true, although he did not know such affirmation to be false, and with reference to this principle the Court said: "Upon this question there can be no doubt; the vendor is clearly liable." This must be read in the light of subsequent decisions.

In *Inge v. Bond,* 10 N. C., 101, *Chief Justice Taylor* drew the distinction between an affirmation as to the title of goods, where the law implies a warranty and the affirmation binds the vendor, and an affirmation as to their soundness, which will not amount to a warranty, unless it appears on the evidence to have been so intended. This is but the statement of the general rule that in order to make a contract the minds of the parties must agree upon the same thing, the intention or belief of one only not being sufficient for the purpose. The intention of both must be the same. It is for the jury to find what the intention was from the language used and the circumstances of the case. The law was stated by *Chief Justice Nash,* in *Foggart v. Blackweller,* 26 N. C., 238, to be well settled, by numerous adjudications, "that there is no word or set form of words required to constitute a warranty in the sale of personal property, but wherever the words used, taken in connection with the attendant circumstances, show that it was a part of the contract with the parties that there should be a warranty, they will suffice. 4 Ad. & E., 473, 31st vol. Com. L. Rep., *Pwon v. Barkham;* 5 B. & A., 240, 7 vol. C. L. R., *Shepherd v. Kain;* 2 Nev. & Mann., 446, 28 vol. C. L. R., *Freeman v. Baker.* These authorities show that every affirmation, made at the time of the sale of personals,

is a warranty, provided it appears to have been so intended by the parties. A bare affirmation, merely expressive of the judgment or opinion of the vendor, will not amount to a warranty; and the reason is, a warranty subjects the vendor to all losses arising from its failure, however innocent he may be, and this responsibility the law will not throw upon him by implication, except as to the title of the property. As it respects the value or soundness of the article sold, the law implies no warranty. The leading case in this State upon the subject of the warranty of personals is that of *Erwin v. Maxwell,* 3 Murph. (7 N. C.), 241. In that case the plaintiff asked the defendant if the horse he was about to let him have was sound, to which the latter answered that he was. His Honor, *Chief Justice Taylor,* in discussing the subject, says: 'To make an affirmation at the time of the sale a warranty, it must appear by evidence to be so intended, and not to have been a mere matter of judgment or opinion.' In the case of *Ayres v. Parks,* 3 Hawks (10 N. C.), 59, the Court says: 'An affirmation at the time of the sale is a warranty, provided it appears in evidence to have been so intended. Whether it was so intended is a matter of fact to be left to the jury.' The last case on this subject is that of *Baum v. Stevens,* 2 Ired. (24 N. C.), 411. In its leading features it strongly resembles this."

It was stated in *Baum v. Stevens* that the true doctrine was established in *Erwin v. Maxwell.* The cases are collected in *McKinnon v. McIntosh,* 98 N. C., 89, and the rule is thus deduced from them and the other authorities: "The defendant had a right to have the question whether the force and effect of the affirmations of the plaintiff in regard to the quality of the fertilizer did not constitute a warranty of the quality. If the vendor represents an article as possessing a value which upon proof it does not possess, he is liable as on a warranty, express or implied, although he may not have known such an affirmation to be false, if such representation was intended, not as a mere expression of opinion, but the positive assertion of a fact upon which the purchaser acts; and this is a question for the jury. *Thompson v. Tate,* 5 N. C., 97; *Inge v. Bond,* 10 N. C., 101; *Foggart v. Blackweller,* 26 N. C., 238; *Bell v.*

*Jeffreys,* 35 N. C., 356; *Henson v. King,* 48 N. C., 419; *Lewis v. Rountree,* 78 N. C., 323; *Baum v. Stevens,* 24 N. C., 411." See, also, *Henson v. King,* 48 N. C., 419; *Lewis v. Rountree,* 78 N. C., 323. The question was presented in *Horton v. Green,* 66 N. C., 596, and the Court said that "a representation simply of soundness does not import absolutely a stipulation of the existence of that quality, but a representation may be made in such terms and under such circumstances as to denote that it was not intended merely as a representation, but that it entered into the bargain itself. In *Ayres v. Parks,* 10 N. C., 59, *Hall, J.,* says: 'Whether an affirmation at the time of sale was intended as a warranty is a matter of fact to be left to the judge.' 'Of necessity, in verbal contracts,' says *Chief Justice Ruffin,* 'greater latitude must be allowed to evidence to establish the words and the meaning of parties. The evidence may consist of everything which tends to establish that the vendor meant to convey the impression that he was binding himself for the soundness of the article and that the vendee relied on what was passing as a stipulation.' Among these circumstances, even the tones, looks, gestures, and the whole manner of the transaction, with all surroundings, would be competent evidence for the jury to consider in making up their verdict. The doctrine upon special contracts of personalty, and whether the question of warranty is to be decided by the court or left to the jury with proper instructions, has been too long and too thoroughly settled in our State to be now overturned by decisions in other courts. We adhere to the decisions of our own Court upon these questions." That case was approved in *Beasley v. Surles,* 140 N. C., 605, and the following language of *Chief Justice Ruffin,* in *Baum v. Stevens, supra,* was adopted: "It is certain that warrant is not an indispensable term in contracts respecting personalty, as it is in conveyances of freehold. It is also true that a representation simply of soundness does not import absolutely a stipulation of the existence of that quality. But the representation may be made in such terms and under such circumstances as to denote that it was not intended merely as a representation, but that it entered into the bargain itself. . . . The evidence may consist of everything which tends to establish that the

vendor meant to convey the impression that he was binding himself for the. soundness of the article, and that the vendee relied on what was passing as a stipulation. Among these circumstances would, of course, be the understanding, at the time, of the bystanders who witnessed the transaction, and the facts on which the impressions of these persons were founded." After further discussion, he concludes: "These, we think, were all matters properly belonging to the jury, to whom they should have been submitted, with instructions that, if they collected therefrom that the defendant did not merely mean to express an opinion, but to assert positively that the negro was sound, and that bidders should, upon the faith of that assertion, bid for the negro as sound, then it would amount to a warranty; otherwise not." The same principle was stated and applied in *Wrenn v. Morgan,* 148 N. C., 101, and *Harris v. Cannady,* 149 N. C., 81, with a full citation of the cases in this Court, and the rule was thus formulated by *Justice Hoke:* "It is accepted law that to hold a bargainor in a sale responsible for a warranty, it is not necessary that this should be given in express terms, but that an affirmation of a material fact, made by a seller at the time of the sale and as an inducement thereto and accepted and relied on by the buyer, will amount to a warranty. Tiffany on Sales, 162." We find in Tiffany on Sales, at p. 162, a statement of the rule apparently corresponding with that adopted by this Court: "No form of words is necessary to create a warranty. Whether the words amount to a warranty is a question of the intention of the parties. The affirmation of a fact made by the seller as an inducement to the sale, if the buyer relies upon it, will amount to a warranty. A statement of opinion or a mere commendatory expression will not. Whether a statement is an affirmation of fact, or whether it is simply a statement of opinion or a commendatory expression, often depends on the nature of the sale and the circumstances of the case."

Applying the principle as thus gathered from the authorities, the court erred in not submitting the case to the jury to find the facts and to pass upon the question of warranty. The language of the parties, as used at the time of the transaction, is

quite as strong to show a warranty as any to be found in the cases we have cited. The defendant was a dealer in horses, and by the testimony as we now have it, he, at least, affirmed that the horse he sold to the plaintiff was of the description he wanted—kind and gentle in harness, and so well-broken that even a lady could drive him with safety. The plaintiff says that he relied upon that representation and bought the horse believing it to be true, and being induced thereby to buy. The jury must decide whether it was intended and accepted as a warranty, and also, upon the evidence, whether there has been a breach thereof, there being evidence of a breach for them to consider.

We have so recently discussed the law in regard to the question as to the deceit that it will be sufficient merely to refer to the case. *Whitmire v. Heath,* 155 N. C., 304. We have also recently considered very fully all the questions now presented, deceit and warranty, in *Robertson v. Halton,* 156 N. C., 215. See, also, *Unitype Co. v. Ashcraft,* 155 N. C., 63. The case of *Allen v. Truesdale,* 135 Mass., 75, is much like this one. It was there held that if a person buys a horse, in reliance upon a false representation by the seller that the horse is safe and not afraid of the cars, and is injured by reason of the horse being frightened by the cars and running, he may maintain an action against the seller for such injuries; and the facts that the accident did not occur until five weeks after the sale, during which time the horse had been driven safely on several occasions, and that the horse, after being frightened, ran three-fourths of a mile, and then turned from the highway towards a place where it had been accustomed to stand, and in doing so overturned the vehicle in which the buyer was riding, are not, as matter of law, conclusive that the vice of the horse did not cause the injury, but are for the jury, citing *Langridge v. Levy,* 2 Mees. & Wils. (Exch.), 519. More to the point, upon facts somewhat similar to those in this case, is *Smith v. Green,* L. R. (1875-6), 1 C. P. Div., 92.

The question of damages is also discussed in *Robertson v. Holton, supra.*

The nonsuit is set aside and a new trial ordered.

New trial.