This action was brought to recover damages for deceit and false warranty in the sale of a horse. In his answer the defendant describes himself as "a regular horse and mule dealer, conducting a sales-stable at Greenville, N.C. The following is the plaintiff's version of the facts, as given in his testimony: "I live in Beaufort County, and am a farmer and house carpenter. I know R. L. Smith, the defendant. *Page 216 
I went to his stables in December, 1907. He has a large stable at Greenville. I saw Mr. Savage before I saw Mr. Smith. Savage was working with Smith. I told Mr. Savage that I wanted a horse, one that my father and mother could drive and that is gentle and all right. I told him that I had never bought a horse before. He showed me the horse in question and told me that he was all right. He priced the horse at $185 cash. I then saw Mr. Smith and told him about the conversation with Savage. He said he had a horse to sell; that was what he was there for. He said the horse was all right. I told Mr. Smith that I did not know anything about horses; that I wanted a quiet, gentle horse. He said that this one was a quiet, gentle horse; that any lady could drive him. I had Mr. Savage to look at my horse, and we traded. I gave $145 to boot, by mortgage on the horse traded for. Mr. Smith had the horse hitched to a break cart and driven a short distance in the stable. He said he had no buggy, but would hitch him to a cart. My brother was with me at the time. I had no experience in buying horses. I told Mr. Smith that I wanted a quiet, gentle horse that my father and mother could drive. He said this was a gentle horse that any lady could drive. I relied on what he said and did not know, except from what he said, whether the horse was gentle or not. After the trade was made, Mr. Smith had the horse hooked up and I drove him home, a distance of about twenty-five miles. The next day after that, I hitched the horse up again. Lum Whitaker was with me. We hitched him to a good buggy with a good harness, and drove him about two miles. The next day Whitaker and I hooked him up and drove (258) him 125 yards, when he began to run and kick and threw me out of the buggy, breaking my leg. Whitaker stopped the horse by pulling him into a fence. I was laid up nearly all the year. I was in bed six weeks, flat on my back. I was then up and down until October or November. The doctor attended me nearly the whole time. My leg was dislocated and broken together. I was then disabled the entire year, and it affects me yet. After I got hurt, John Hodges worked the horse for me beside an old team and broke him for me, and I drove him that fall. The horse was not worth anything to me. I reckon he was worth $150 or $175 on the market. I saw the horse after I got hurt. That fall I wrote Mr. Smith a letter, in November, 1908, and told him I could not pay for the horse and the interest on the mortgage, and to send for him, which he did. Before I was hurt I could do a man's work. At the time of the injury the horse was in the main public road near my house, and threw me out of the buggy. My doctor's bill was $100. I had to hire a man to work at 50 cents per day and board at 25 cents per day. The horse I traded to Smith was worth $50. I lost him and *Page 217 
lost my crop that year. My time was worth $1 per day. I have not been able to do a good day's work since. Was about 24 years old when I made this trade."
At the close of the testimony for the plaintiff, the court, on motion of the defendant, entered a judgment as of nonsuit, and the plaintiff appealed.
The defendant, in his answer, denies the plaintiff's allegations, the substance of which have been set out, and avers that he had recently bought the horse when he sold him to the plaintiff, and not knowing his qualities, he could not have warranted or represented that he was kind and gentle in harness, but told the plaintiff that the person who sold the horse to him represented him to be sound and safe, and he only expressed an opinion to the plaintiff, based upon such knowledge as he had thus acquired, that the horse would suit him, and that he made no warranty and practiced no deceit. The issue thus raised by the pleadings was not submitted to the jury and the defendant offered no testimony, so that the case must be considered solely upon the (259) evidence of the plaintiff.
We think the judge erred in ordering a nonsuit. The question involved in this case has frequently been decided by this Court against the contention of the defendant. As early as 1805, in Thompson v. Tate, 5 N.C. 97, it was held that a vendor of goods is liable, on an express or implied warranty, for affirming, at the time of the sale, that they possess a particular quality which would increase their value, if it turns out that the affirmation is not true, although he did not know such affirmation to be false, and with reference to this principle the Court said: "Upon this question there can be no doubt; the vendor is clearly liable." This must be read in the light of subsequent decisions.
In Inge v. Bond, 10 N.C. 101, Chief Justice Taylor drew the distinction between an affirmation as to the title of goods, where the law implies a warranty and the affirmation binds the vendor, and an affirmation as to their soundness, which will not amount to a warranty, unless it appears on the evidence to have been so intended. This is but the statement of the general rule that in order to make a contract the minds of the parties must agree upon the same thing, the intention or belief of one only not being sufficient for the purpose. The intention of both must be the same. It is for the jury to find what the intention was from the language used and the circumstances of the case. The law was *Page 218 
stated by Chief Justice Nash, in Foggart v. Blackweller, 26 N.C. 238, to be well settled, by numerous adjudications, "that there is no word or set form of words required to constitute a warranty in the sale of personal property, but wherever the words used, taken in connection with the attendant circumstances, show that it was a part of the contract with the parties that there should be a warranty, they will suffice. 4 A. E., 473; Pwon v. Barkham, 31 Cob. L., 5; B. A., 240; Shepherdv. Kain,; 2 Nev. Mann., 446; Freeman v. Burke, 28 C. L. These authorities show that every affirmation, made at the time of the sale of personals, is a warranty, provided it appears to have been so (260) intended by the parties. A bare affirmation, merely expressive of the judgment or opinion of the vendor, will not amount to a warranty; and the reason is, a warranty subjects the vendor to all losses arising from its failure, however innocent he may be, and this responsibility the law will not throw upon him by implication, except as to the title of the property. As it respects the value or soundness of the article sold, the law implies no warranty. The leading case in this State upon the subject of the warranty of personals is that of Erwin v.Maxwell, 7 N.C. 241. In that case the plaintiff asked the defendant if the horse he was about to let him have was sound, to which the latter answered that he was. Chief Justice Taylor, in discussing the subject, says: `To make an affirmation at the time of the sale a warranty, it must appear by evidence to be so intended, and not to have been a mere matter of judgment or opinion.' In the case of Ayres v. Parks,10 N.C. 59, the Court says: `An affirmation at the time of the sale is a warranty, provided it appears in evidence to have been so intended. Whether, it was so intended is a matter of fact to be left to the jury.' The last case on this subject is that of Baum v. Stevens, 24 N.C. 411. In its leading features it strongly resembles this."
It was stated in Baum v. Stevens that the true doctrine was established in Erwin v. Maxwell. The cases are collected in McKinnon v. McIntosh,98 N.C. 89, and the rule is thus deduced from them and the other authorities: "The defendant had a right to have the question whether the force and effect of the affirmations of the plaintiff in regard to the quality of the fertilizer did not constitute a warranty of the quality. If the vendor represents an article as possessing a value which upon proof it does not possess, he is liable as on a warranty, express or implied, although he may not have known such an affirmation to be false, if such representation was intended, not as a mere expression of opinion, but the positive assertion of a fact upon which the purchaser acts; and this is a question for the jury. Thompson v. Tate, 5 N.C. 97; Inge v. Bond,10 N.C. 101; Foggart v. Blackweller, 26 N.C. 238; Bell v. *Page 219 Jeffreys, 35 N.C. 356; Henson v. King, 48 N.C. 419; Lewis (261)v. Rountree, 78 N.C. 323; Baum v. Stevens, 24 N.C. 411." See, also, Henson v. King, 48 N.C. 419; Lewis v. Rountree,78 N.C. 323. The question was presented in Horton v. Green, 66 N.C. 596, and the Court said that "a representation simply of soundness does not import absolutely a stipulation of the existence of that quality, but a representation may be made in such terms and under such circumstances as to denote that it was not intended merely as a representation, but that it entered into the bargain itself. In Ayres v. Parks,10 N.C. 59,Hall, J., says: `Whether an affirmation at the time of sale was intended as a warranty is a matter of fact to be left to the judge.' `Of necessity, in verbal contracts,' says Chief Justice Ruffin, `greater latitude must be allowed to evidence to establish the words and the meaning of parties. The evidence may consist of everything which tends to establish that the vendor meant to convey the impression that he was binding himself for the soundness of the article and that the vendee relied on what was passing as a stipulation.' Among these circumstances, even the tones, looks, gestures, and the whole manner of the transaction, with all surroundings, would be competent evidence for the jury to consider in making up their verdict. The doctrine upon special contracts of personalty, and whether the question of warranty is to be decided by the court or left to the jury with proper instructions, has been too long and too thoroughly settled in our State to be now overturned by decisions in other courts. We adhere to the decisions of our own Court upon these questions." That case was approved in Beasley v. Surles,140 N.C. 605, and the following language of Chief Justice Ruffin, inBaum v. Stevens, supra, was adopted: "It is certain that warrant is not an indispensable term in contracts respecting personalty, as it is in conveyances of freehold. It is also true that a representation simply of soundness does not import absolutely a stipulation of the existence of that quality. But the representation may be made in such terms and under such circumstances as to denote that it was not intended merely as a representation, but that it entered into the bargain itself. . . . The evidence may consist of everything which tends to establish that the vendor meant to convey the impression that he was binding himself for the soundness of the article, and that the vendee relied (262) on what was passing as a stipulation. Among these circumstances would, of course, be the understanding, at the time, of the bystanders who witnessed the transaction, and the facts on which the impressions of these persons were founded." After further discussion, he concludes: "These, we think, were all matters properly belonging to the jury, to whom they should have been submitted, with instructions *Page 220 
that, if they collected therefrom that the defendant did not merely mean to express an opinion, but to assert positively that the negro was sound, and that bidders should, upon the faith of that assertion, bid for the negro as sound, then it would amount to a warranty; otherwise not." The same principle was stated and applied in Wrenn v. Morgan, 148 N.C. 101, andHarris v. Cannady, 149 N.C. 81, with a full citation of the cases in this Court, and the rule was thus formulated by Justice Hoke: "It is accepted law that to hold a bargainor in a sale responsible for a warranty, it is not necessary that this should be given in express terms, but that an affirmation of a material fact, made by a seller at the time of the sale and as an inducement thereto and accepted and relied on by the buyer, will amount to a warranty. Tiffany on Sales, 162." We find in Tiffany on Sales, at p. 162, a statement of the rule apparently corresponding with that adopted by this Court: "No form of words is necessary to create a warranty. Whether the words amount to a warranty is a question of the intention of the parties. The affirmation of a fact made by the seller as an inducement to the sale, if the buyer relies upon it, will amount to a warranty. A statement of opinion or a mere commendatory expression will not. Whether a statement is an affirmation of fact, or whether it is simply a statement of opinion or a commendatory expression, often depends on the nature of the sale and the circumstances of the case."
Applying the principle as thus gathered from the authorities, the court erred in not submitting the case to the jury to find the facts and to pass upon the question of warranty. The language of the parties, as used at the time of the transaction, is quite as strong to show a (263) warranty as any to be found in the cases we have cited. The defendant was a dealer in horses, and by the testimony as we now have it, he, at least, affirmed that the horse he sold to the plaintiff was of the description he wanted — kind and gentle in harness, and so well-broken that even a lady could drive him with safety. The plaintiff says that he relied upon that representation and bought the horse believing it to be true, and being induced thereby to buy. The jury must decide whether it was intended and accepted as a warranty, and also, upon the evidence, whether there has been a breach thereof, there being evidence of a breach for them to consider.
We have so recently discussed the law in regard to the question as to the deceit that it will be sufficient merely to refer to the case. Whitmirev. Heath, 155 N.C. 304. We have also recently considered very fully all the questions now presented, deceit and warranty, in Robertson v. Halton,156 N.C. 215. See, also, Unitype Co. v. Ashcraft, 155 N.C. 63. The case of Allen v. Truesdale, 135 Mass. 75, is much like this *Page 221 
one. It was there held that if a person buys a horse, in reliance upon a false representation by the seller that the horse is safe and not afraid of the cars, and is injured by reason of the horse being frightened by the cars and running, he may maintain an action against the seller for such injuries; and the facts that the accident did not occur until five weeks after the sale, during which time the horse had been driven safely on several occasions, and that the horse, after being frightened, ran three-fourths of a mile, and then turned from the highway towards a place where it had been accustomed to stand, and in doing so overturned the vehicle in which the buyer was riding, are not, as matter of law, conclusive that the vice of the horse did not cause the injury, but are for the jury, citing Langridge v. Levy, 2 Mees. Wils. (Exch.), 519. More to the point, upon facts somewhat similar to those in this case, is Smith v.Green, L. R. (1875-6), 1 C. P. Div., 92.
The question of damages is also discussed in Robertson v. Holton, supra.
The nonsuit is set aside and a new trial ordered.
New trial.
Cited: S.C., 159 N.C. 526; Fields v. Brown, 160 N.C. 299; Winn v.Finch, 171 N.C. 275.
(264)