This action was brought, under Revisal, sec. 1589, to determine the title to a certain tract of land, of which the plaintiff claims to be the owner, and which defendant claims under a tax deed executed by the sheriff to him in 1910. The action was tried by the judge upon a case agreed, which is quite lengthy, and for that reason we will not set it out in full, but instead, refer to the material facts in the course of this opinion. The case involves the validity of the tax deed, which plaintiff attacks upon several grounds, which we will consider in their order.
First. The land, we will assume for the present, belonged to C. H. Rexford, and he claimed it, in part at least, under a deed from A. C. Avery and others to J. S. Bailey and a deed from J. S. Bailey to himself, which describe the land by metes and bounds as containing 13,625 acres, with the exception of several tracts therein particularly described, the number of acres in which is not stated. On 26 September, 1906, C. H. Rexford executed a deed in trust on part of the land to J. E. Rankin, to secure a debt [of] $20,000 due to J. S. Bailey. In November, 1906, C. H. Rexford contracted with J. W. Kitchin to sell to him all of the said land, and this contract was assigned by Kitchin to a corporation known as the Kitchin Lumber Company. The deeds, the contract of sale, and the assignment were duly registered in Graham County at and (216) before the time of the transactions hereinafter set forth. C. H. Rexford did not list the land for taxation in 1907, but the tax lister for Yellow Creek Township listed 6,587 acres of land in the name of J. W. Kitchin by him as agent, but without any authority so to do, as far as appears, and the number of acres was reduced on application of the tax lister, but without the knowledge or authority of Kitchin, to 4,352, that having been stated by him to be the correct number of acres by actual survey. The taxes for 1907-'8 were paid by the son of Rexford with the latter's check. It is said in the case that the land was not listed in June, 1908, by any one, but the list-taker merely copied the entry from the former tax book, and thus listed the same number of acres in the name of Kitchin for that year. It does not appear that he had any authority to do so. So it is the fact, as stated in the complaint, that C. H. Rexford did not list the land, nor did Kitchin; and the question, therefore, is whether what was done by the list-taker in 1908 was a compliance with the statute. We do not think it was. There were two ways at that time for listing land for taxes. Revisal, secs. 5217, 5222, and 5227, provides that the owner, in person, shall list his property under oath, setting forth in detail how it shall be done, and section 5218 provides that certain persons may appoint agents to list for them. Section 5233 provides that if the owner fails to list at the appointed time, the chairman of the board of commissioners shall list the same, in the name *Page 175 
of the owner, by inserting in the tax list the description and valuation of all property not listed by him, and shall charge him with a double tax, and section 5232 provides for the collection of taxes on land which has escaped taxation for previous years, by adding to the simple taxes of the current year all taxes due for preceding tax years, with 25 per cent interest thereon. There is no provision in the law for the listing of land by a township tax-lister, or in any other way than the one prescribed. It cannot be disputed that under the statute authorizing the sale of land for taxes it is necessary to show that the land has been listed for taxes. That is made by the law the first step in the process of assessment. It is the fundamental fact upon which the whole structure of taxation, in its various stages, must rest, and this listing must be done in the manner prescribed by the statute. If any argument (217) were required to demonstrate this proposition, it is to be found in the provisions of the statute itself. If the owner or any other person or officer authorized to list the property should give a mistaken description of the same, the statute provides that the irregularity may be cured, or in certain cases disregarded, if the description is sufficiently definite "for any interested person to determine what property is meant or intended by the description," in which case the defective description may be perfected in the sheriff's deed. But this provision applies only when there has been a listing by the owner or some other person designated by the statute, and not where it is done officiously by a stranger. The Legislature has never provided that a person without authority in law or in fact may enter on the lists an indefinitely described number of acres in a township containing many thousand acres, not in the name of the owner, but of some one else, and thereby confer authority to sell lands thus listed, and by the sheriff's deed pass the title to the lands of another person whose name does not appear in the list, and whose lands are not described therein, and who has never authorized the listing of his land by another, and whose land has not been listed by the chairman of the county commissioners, as required by law in case of the owner's default. Such a description of land as we have in this case is too vague to give to any one notice of the land assessed for taxation; it is no description at all, as it could be applied to any land in the township.Holmes v. School District, 11 Ore., 332, 287. The law penalizes a taxpayer for not listing his land, by doubling his tax, but not by divesting his title. If he lists his land, or it is done by the proper officer, and then he fails to pay his taxes, he may lose the title in the manner prescribed by the statute. He does not forfeit it by not listing, but by not paying. There was no listing in this case, because authority is nowhere given to a list-taker to enter property on the lists for assessment. The Legislature provided these safeguards for the just protection of the taxpayer, *Page 176 
and the law must be enforced as it is written. Black on Tax Titles (2 Ed.), sec. 105; Whitney v. Taylor, 23 N.Y. 281; Desmond v.(218) Bobbitt, 117 Mass. 233; Bell v. Fry, 5 Dana, 341; Mansfield v. Martin, 3 Mass. 419; Pearson v. Creed, 78 Cal. 144; Dubris v.Webster, 7 Hun., 371. The provisions of the law are adequate for the proper listing of property and the collection of taxes, and the Legislature did not intend that it should be confiscated without notice. The facts stated in the record present a strong case for the application of the rule and the enforcement of these plain provisions of the statute, for it is agreed by the parties that the sheriff and the defendant knew before the sale that they were attempting to sell C. H. Rexford's land, whereas authority was only given to sell 4,352 acres, listed in the name of J. W. Kitchin.
Second. But there are other fatal defects in the proceedings which invalidate the sheriff's deed. The statute (Revisal, sec. 2903) requires that the purchaser at the sheriff's sale shall serve written notice of his purchase and of the date when the time of redemption will expire, "on every person in actual possession or occupancy of the land," and also "upon every person having a mortgage or deed of trust thereon, recorded in the county, if by diligent inquiry he can be found," and publication of the notice is required if actual service of the notice cannot be made. It appears that W. C. Heyser, representing the Brunswick-Balk-Collender Company, which claimed certain rights in the timber on the land, was in possession of a part of the land in controversy from 25 December, 1909, to 1 June, 1910, and that E. E. Deputy was in possession of the land, as tenant of C. H. Rexford, from the year 1904 until 24 December, 1909. No notice was served by the defendant, as purchaser, on either of these persons. The defendant requested a finding that W. C. Heyser occupied land within one of the exceptions of the deed, but the court expressed its inability to so find, under the evidence. Defendant served a notice on Lampkin Farley, who occupied a part of the land near the Tennessee River, known as the Rymer boundary. No personal service of the notice was made on J. E. Rankin, trustee of J. S. Bailey, and no publication of a notice addressed to them by their names. There was published a notice to J. W. Kitchin, C. H. Rexford, "and whomsoever it may concern." There seems to be no provision in the statute for service (219) or publication of the notice, except as to the person in whose name the land is listed, persons in actual possession of it, and persons having a mortgage or deed of trust upon it. No purchaser is entitled to a deed until the proper notice is given (Revisal, sec. 2903), and until he shall have made an affidavit that he has complied with the requirements as to notice, setting forth therein particularly the facts showing such compliance. Section 2904. This affidavit must be delivered to *Page 177 
depend upon the facts and circumstances of each case as it is presented. We have stated some general rules, though, which will serve as guides to us in such matters.
1. When the statements made by sellers amount to nothing more upon their face than a mere commendation of the goods which is usual in sales — a puffing of wares, as it is sometimes called — there is no warranty or deceit. Cash Register Co. v. Townsend, 137 N.C. 652 (70 L.R.A., 349).
2. Where the statement takes the form of an opinion or estimate of value or quality, and it is doubtful whether or not a warranty was intended, the question should be submitted to the jury to say whether one was in fact intended. Unitype Co. v. Ashcraft, 155 N.C. 63, citing authorities. InMcKinnon v. McIntosh, 98 N.C. 89, it was said upon a kindred question, relating to a sale of fertilizers: "The defendant had a right to have the question whether the force and effect of the affirmation of the plaintiff in regard to the quality of the fertilizer did not constitute a warranty of the quality. If the vendor represents an article as possessing a value which upon proof it does not possess, he is liable as on a warranty, express or implied, although he may not have known such an affirmation to be false, if such representation was intended, not as a mere expression of opinion, but the positive assertion of a fact upon which the purchaser acts; and this is a question for the jury. Thompson v. Tate, 5 N.C. 97;Inge v. Bond, 10 N.C. 101; Foggart v. Blackweller, 26 N.C. 230; Bell v.Jeffreys, 35 N.C. 356; Henson v. King, 48 N.C. 419; Lewis v. Rountree,78 N.C. 323; Baum v. Stevens, 24 N.C. 411."
3. Where, though, the words or language clearly show a warranty, it becomes a question of law for the court, without the aid of the jury, to so declare, as in Unitype Co. v. Ashcraft, supra; Machine Co. v. Feezer,152 N.C. 516; Audit Co. v. Taylor, 152 N.C. 272.
4. In order to constitute a deceit, several facts must concur and be established by the proof. There must be a statement made by the defendant, (a) which is untrue; (b) the person making the statement, or the person responsible for it, either must know it to (221) be untrue or be culpably ignorant (that is, recklessly and consciously ignorant) whether it be true or not; (c) it must be made with the intent that the plaintiff shall act upon it, or in a manner apparently fitted to induce him to act upon it; (d) the plaintiff must act in reliance on the statement in the manner contemplated or manifestly probable, and thereby suffer damage. 71 S.E. Rep., No. 2, p. 62, second column; Pollock on Torts (7 Ed.), 276; Whitehurst v. Ins. Co., 149 N.C. 273;Unitype Co. v. Ashcraft, supra. The gist of the action for deceit is fraudulently producing a false impression upon the mind of the other *Page 178 
party by words or acts, or concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff. Stewart v. RanchCo., 128 U.S. 383. In order to maintain the action, it is sufficient to show that the defendant practiced a deception with the design of depriving the plaintiff of some right, profit, or advantage, and to acquire it for himself or avail himself of it in some way. Bank v. Petrie,189 U.S. 423-425. In Whitmire v. Heath, 155 N.C. 304, the three requisites of an actionable deceit were thus stated: "1. The representation must be false. 2. The party making it must know that it is false, commonly called the `scienter.' 3. It must have misled the other party and induced him to contract upon the faith of the representation as true," citing numerous cases, and especially Lunn v. Shermer, 93 N.C. 164; Black v. Black,110 N.C. 398; Ashe v. Gray, 88 N.C. 190 (same case on rehearing,90 N.C. 137), all actions against horse dealers.
5. A warranty is contractual, but may be joined with a cause of action for deceit, which is a tort. The old and new mode of pleading is clearly stated in Ashe v. Gray, supra, and quoting from the opinion of the Court (by Chief Justice Pearson) in Bullinger v. Marshall, 70 N.C. 520,Chief Justice Smith says: "If there be a warranty of soundness in the sale of a horse, the vendee may sue upon the contract of warranty, and the justice of the peace has jurisdiction, or may declare in tort for a false warranty and add a count in deceit, in which case a justice of the peace has not jurisdiction, the plaintiff being (222) permitted to declare collaterally in tort for a false warranty in order to enable him to give in a count for the deceit, which, of course, was in tort." Ashe v. Gray, 88 N.C. 192. See, also, S. c., on rehearing, 90 N.C. 137.
For the error noted by us a new trial upon all the issues will be had in the lower court.
New trial.
Cited: Hodges v. Smith, 158 N.C. 263; Fields v. Brown, 160 N.C. 299;Winn v. Finch, 171 N.C. 276. *Page 179