H. G. KIME v. W. J. RIDDLE.

(Filed 31 October, 1917.)

1. **Vendor and Purchaser—Representations—Contracts—Warranties.**

Where, in the sale of a horse, the vendor represents to the purchaser that the animal was sound and all right for the latter's purposes, it is not open to the vendor's objections that the court left the question of warranty and breach thereof to the jury upon conflicting evidence under proper instructions.

KIME *v.* RIDDLE.

2. **Same—Breach—Intent—Trials—Questions for Jury.**

Where the statement of the vendor to the purchaser of a horse as to the animal's condition, relied on as a warranty, is in dispute, it is for the jury to determine the fact in regard thereto; and where the statement is admitted, the question of warranty often depends upon the intent with which it was uttered, presenting a mixed question of law and fact for the jury; but where the statement is admitted and the intent is clear and unequivocal, it may be construed as a warranty, as a matter of law.

3. **Vendor and Purchaser—Warranty—Breach—Measure of Damages—Evidence.**

Upon vendor's breach of warranty in the sale of a horse, the purchaser's measure of damages, unless in exceptional cases of special damage, is the difference between the value of the animal as warranted and as delivered, and evidence as to its condition and value may be competent and relevant to the questions of warranty and damages.

4. **Vendor and Purchaser—Warranty — Contracts — Breach — Exchange—Waiver.**

Where a vendor has breached his warranty to take back the horse sold, and the purchaser has in consequence exchanged the animal for another, such exchange is not a waiver by the purchaser of his right to recover his damages arising from the vendor's breach.

CIVIL ACTION, tried before *Kerr, J.,* and a jury, at May Term, 1917, of ALAMANCE.

Plaintiff sued upon a note for $150, given by the defendant to him for the price of a gray horse. Defendant set up a counterclaim, after admitting the execution of the note, and alleged therein that plaintiff had expressly warranted the gray horse to be sound and all right, and one that would do defendant's business, and after he was tried, if the representation or warranty was found to be untrue, plaintiff would make it good by exchange for another horse or in money. Defendant gave another horse, valued at $75 and the note for $150 to plaintiff for the gray horse. The latter proved to be unsound, defendant testifying that "The gray horse was poor and there was something wrong with him, which I supposed to be kidney trouble. He was not able to do a day's plowing." He then took the horse to plaintiff, who refused to receive him, advising defendant to exchange him with some one for another horse, and stating that he had no horse to give him in the place of the gray animal. As plaintiff refused to take back the gray horse, defendant exchanged him for a black mare. The jury rendered the following verdict:

1. Is the defendant indebted to the plaintiff, and if so, in what amount? Answer: $150 and interest from 21 March, 1912.

2. Did the plaintiff warrant the gray horse, as alleged in the answer? Answer: Yes.

3. Was there a breach of said warranty? Answer: Yes.

4. What damage, if any, has defendant sustained because of said false warranty of the gray horse? Answer: $197.

5. Did the defendant, by his conduct in trading the gray horse for the black mare, waive any warranty of the gray horse? Answer: No.

Judgment on the verdict, and plaintiff appealed.

*W. H. Carroll and E. S. Parker, Jr., for plaintiff.*
*William I. Ward for defendant.*

WALKER, J., after stating the case: There was practically no controversy as to .the warranty of the gray horse, though if there had been plaintiff would have no ground of complaint, as the court required the jury to find whether or not there was such a warranty. There was some dispute as to subsequent events, and particularly as to what occurred when the defendant went to the plaintiff's stable with the gray horse for the purpose of returning him and getting another horse in his place, as the gray horse was not such as represented in the warranty. This controversy was fairly submitted to the jury by the court, and the facts were found to be contrary to the plaintiff's contention and the evidence upon which he relied. Where there is a dispute as to the facts, whether there was a warranty, becomes a question for the jury. Unless the language is clear and unquestioned, so that upon the face of it there is a warranty, as matter of law the jury should determine, as a mixed question of law and fact, whether there was a warranty, as it often depends upon the intention of the parties. *McKinnon v. McIntosh,* 98 N. C., 89; *Unitype Co. v. Ashcraft,* 155 N. C., 63; *Robertson v. Halton,* 156 N. C., 215; *Hodges v. Smith,* 158 N. C., 256. Whether the affirmation as to the soundness of a horse amounts to a warranty depends upon the intention of the parties, was held in *Turner Bros. v. Clarke,* 143 Ga., 44. When the statements made by the seller are nothing more than a mere commendation of his goods, which is usual in sales—a puffing of wares, as it is sometimes called—there is no warranty or deceit. *Cash Register Co. v. Townsend,* 137 N. C., 652. The matter is fully discussed and the distinctions stated in *Robertson v. Halton, supra.* But sometimes what is said by the seller will of itself constitute a warranty, and the only question would be whether he used the words, if the evidence in regard to it is conflicting. There was no error in leaving the question to the jury in this case, so far as plaintiff is concerned.

The rule of damages was correctly laid down by the Court and as it is stated in *Robertson v. Halton, supra,* citing *Marsh v. McPherson,* 105 U. S., viz.: "The difference in actual value between the article as warranted and the article as delivered is all that can be properly recov-

ered as damages, unless in exceptional cases of special damages. Whatever that difference in the actual circumstances of the case is shown to be is the true rule and measure of damages, where the articles delivered are not what the contract calls for." The evidence as to the condition and value of the gray horse was clearly relevant to the question whether there had been a warranty, and also to the issue of damages.

We do not see how the exchange of the gray horse for the black mare, after plaintiff had refused to take back the gray horse in violation of his contract of warranty, can affect the right of defendant to recover on his counterclaim. There was no waiver or abandonment of the warranty. The defendant merely did what the warranty required him to do, and plaintiff was in default when he refused to comply with his promise, so that the gray horse belonged to the defendant, with the right to sue for the damages resulting from a breach of the warranty. The jury found, under the evidence and charge of the court, that plaintiff had first broken the contract, and this clearly established defendant's counterclaim and right to compensation for the breach. The other evidence was competent on the fourth issue as to damages. We may add that the court submitted the question as to a waiver or abandonment of the warranty to the jury, and the answer to the last issue was adverse to the plaintiff's contention.

The real and decisive question was one of fact, and it has been settled against the plaintiff.

No error.